The BORDEN COMPANY

v.

William SYLK and Harry S. Sylk

v.

PENROSE INDUSTRIES CORPORATION

Sylvan Seal Milk, Inc., Appellant.

No. 17592.

United States Court of Appeals Third Circuit.

Argued March 28, 1969.

Decided May 13, 1969.

**844**

Israel Packel, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for appellant.

John D. Egnal, Egnal, Simons & Egnal, Michael H. Egnal, Philadelphia, Pa., for appellees.

Before SEITZ, ALDISERT and STAHL, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This is an appeal from a discovery order of the district court compelling the disclosure of certain business information by a non-party witness 289 F.Supp. 847. Suit was brought in the court below by the Borden Company against William and Harry Sylk as the endorsers of certain outstanding promissory notes. The maker of the notes, Penrose Industries Corporation, was joined as a third-party defendant.

Penrose filed cross-claims against Borden alleging breach of contract and violations of federal anti-trust laws. Specifically, Penrose asserted that: (1) Borden breached its agreement to sell ice cream to Penrose at a price equal to the lowest retail-outlet price charged by Borden; and (2) Borden's use of its wholly-owned subsidiary Sylvan Seal Milk, Inc. in distributing its products was in violation of the Robinson-Patman Act, 15 U.S.C. §§ 13 and 14.

When Borden's motion to dismiss the cross-claims was denied by the lower court, Penrose moved to depose certain corporate officers of Borden and Sylvan in an attempt to discover the specifics of the Borden-Sylvan distributive arrangement. In the course of depositions, Sylvan's president refused to answer certain inquiries into the volume and prices charged by Sylvan to its customers. The ostensible reason for his refusal was that publication of such confidential information would seriously prejudice Sylvan's competitive standing.

Penrose then moved to compel answers. Upon a finding that the information sought could be considered relevant to the litigation, the district court granted the motion. To insulate Sylvan against serious competitive damage, at least at the pretrial stage, the court directed that "no such information shall be disclosed to the public or to any competi-

tor of the plaintiff." Sylvan has appealed.

■■ It is a well-established principle that the scope and conduct of discovery are within the sound discretion of the trial court. It is equally well established that such orders compelling or denying discovery are generally interlocutory. Since the enactment of the Judiciary Act of 1789, the Congress has consistently directed that the jurisdiction of the courts of appeals should extend only to decisions of the district courts which are final. 28 U.S.C.A. § 1291. Only certain specifically enumerated orders which would otherwise be considered interlocutory, contained in Section 1292 of Title 28, none of which are involved here, are appealable.

In considering the Congressional directive as it relates to our appellate jurisdiction, Chief Judge Hastie has emphasized its "jurisprudential significance beyond mere technicality. It is an authoritative application and implementation of a basic and persisting policy against piecemeal appeals." Panichella v. Penna. R. Co., 252 F.2d 452, 454 (3 Cir. 1958).

Admittedly, the determination of what decisions are final may sometimes be difficult. Recognizing this, the Supreme Court has indicated that "the requirement of finality is to be given a 'practical rather than a technical construction.'" Gillespie v. United States Steel Corp., 379 U.S. 148, 153, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). The Court also suggests that the most important considerations in deciding the issue of finality are "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950).

Close questions of finality are not ordinarily presented where, as here, the appeal is from an order compelling or denying discovery. This is so because such orders bespeak their own interlocutory character. They are necessarily only a stage in the litigation and almost invariably involve no determination of the substantive rights involved in the action. For example, in Apex Hosiery Co. v. Leader, 102 F.2d 702, 703 (3 Cir. 1939), an action for treble damages under the Sherman Anti-Trust Act, this court ruled that an order compelling the discovery and production of business documents was interlocutory and not appealable. Citing the observations of Mr. Justice Brandeis in Cogen v. United States, 278 U.S. 221, 223, 49 S.Ct. 118, 119, 73 L.Ed. 275 (1928), it was noted that:

> "The disposition made of the motion will necessarily determine the conduct of the trial and may vitally affect the result. In essence, the motion resembles others made before or during a trial to secure or to suppress evidence, such as applications to suppress a deposition, to compel the production of books or documents, for leave to make physical examination of a plaintiff, or for a subpoena duces tecum. The orders made upon such applications, so far as they affect the rights only of parties to the litigation, are interlocutory." (Citations omitted.)

While recognizing the validity of this general rule of non-appealability, appellant seems to argue that we should not invoke it because the appellant is not a party to the litigation. It suggests that because of its non-party status, the district's order compelling it to disclose certain business information is a matter "collateral" to the litigation and therefore appealable under the rule of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Supreme Court in *Cohen* held that an order requiring the deposit of security as a prerequisite to the maintenance of a stockholder's derivative suit was final and appealable.

We have detected what appears to be an irresistible impulse on the part of appellants to invoke the "collateral order" doctrine whenever the question of ap-

pealability arises. Were we to accept even a small percentage of these sometime exotic invocations, this court would undoubtedly find itself reviewing more "collateral" than "final" orders.

 The *Cohen* rule is readily distinguishable from the present issue. There, the appellate courts were confronted with a question of law which was totally independent of the issue involved in the litigation; and the resolution of the question—whether a deposit of security was required for the plaintiffs to go forward with the litigation—could be made without any reference to the substance of the action. This is in sharp contrast to the present case where the appellant bases its entire opposition to the discovery order on the grounds that the information sought is not relevant to the issues raised in the litigation. The argument itself betrays the essentially noncollateral nature of the question, for if the propriety of the lower court's order can be determined only by making reference to the substantive litigation, then clearly it is not a "collateral" matter within the *Cohen* meaning.

 The appellant's claim that the order should be viewed as appealable because of the potentially harmful impact on its competitive status is also without merit. First, the argument ignores the protective provisions of the order prohibiting publication of disclosure outside the litigation. Moreover, it presumes that the possibility of pecuniary injury alone is sufficient to justify appellate review.

A similar argument was advanced in United States v. Fried, 386 F.2d 691 (2 Cir. 1967), where a non-party witness sought appellate review of an order requiring his presence for testimony on the grounds that attendance could seriously jeopardize his health. In that case, as here, the appellant relied heavily on the holding in Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10 Cir. 1965), which permitted an appeal by a nonparty witness served with a subpoena requiring the disclosure of trade secrets. After reviewing the holding in *Covey*, the court in *Fried* rejected the appeal, choosing instead to follow the rule of Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906) which held that: "a judge's order directing a witness to answer a question in the very action pending lacks the finality required to support an appeal by the witness until he decides to risk citation for contempt and a contempt order is made." 386 F.2d at 694. We perceive no reason why the present case should not be governed by the same rule.

Every interlocutory order involves, to some degree, a potential loss. That risk, however, must be balanced against the need for efficient federal judicial administration as evidenced by the Congressional prohibition of piecemeal appellate litigation. To accept the appellant's view is to invite the inundation of appellate dockets with what have heretofore been regarded as nonappealable matters. It would constitute the courts of appeals as second-stage motion courts reviewing pretrial applications of all non-party witnesses alleging some damage because of the litigation.

To accept the appellant's view is also to invite a geometrical increase in the already unacceptable delay between the date of filing and trial in the metropolitan district courts. The present case, filed over three years ago and now held in abeyance pending the outcome of this appeal, is a splendid example of the Homeric proportions that such litigation can assume. Our overburdened courts have little time or appetite for such protractions.

The appeal will be dismissed for want of jurisdiction.