**Raymond J. RYAN and Helen Ryan, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 74–1663.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1975.

Decided May 23, 1975.

Certiorari Denied Oct. 14, 1975.
See 96 S.Ct. 190.

Raymond G. Larroca, Washington, D. C., George C. Barnett, Evansville, Ind., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., and Richard M. Roberts, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before SWYGERT and TONE, Circuit Judges, and PERRY, Senior District Judge.*

PERRY, Senior District Judge.

This is an appeal from an order of the United States Tax Court which directed petitioners below, Raymond J. Ryan and Helen Ryan, his wife [hereinafter "the Ryans"], to answer certain interrogatories served by respondent below, the Commissioner of Internal Revenue [hereinafter "the Commissioner"].

In 1964 the Commissioner instituted an investigation of the possible tax liabilities of petitioner Raymond J. Ryan [hereinafter "Ryan"]. This investigation resulted in three successive indictments against Ryan for conspiracy to defraud the Internal Revenue Service, obstruction of justice, criminal contempt, and violation of the Foreign Direct Investment Act. Ryan was acquitted on the first two indictments (United. States v. Ryan, 455 F.2d 728 (9th Cir. 1972); In the Matter of Ryan, Misc. No. 1926, May 4, 1972 (C.D.Cal.)); the third indictment was dismissed by the United States District Court and an appeal noticed by the Government was dropped several months thereafter (United States v. Ryan, D.D.C. No. Cr 2038–72, March 2, 1973, appeal dismissed, United States Court of Appeals, D.C.Cir. No. 73–1354, July 13, 1973). In June of 1969, while the criminal investigation was in progress, the Commissioner filed a jeopardy assess-

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

ment of more than nine million dollars against the Ryans.

The Ryans initiated the proceedings below in September of 1969 by filing a petition in the Tax Court for a redetermination of deficiencies in income taxes, including fraud penalties, asserted by the Commissioner for the taxable years 1958 through 1965. The jeopardy assessment was dissolved after the Ryans filed the aforesaid petition and agreed to the imposition of certain encumbrances on their assets and certain limitations upon their right to travel.

In October of 1971 the Commissioner applied to the Tax Court for an order permitting him to take depositions, upon written interrogatories, of unnamed bank officials in Switzerland, pursuant to the Double Taxation Convention of 1951 entered into between the United States of America and Switzerland. The Ryans objected on the grounds, *inter alia,* that said Convention did not authorize such depositions and that the rules of the Tax Court then in force did not permit discovery by either party. The Tax Court granted the Commissioner's application, and this Court dismissed the Ryans' appeal for lack of jurisdiction and denied an alternative petition for mandamus. Ryan v. Commissioner of Internal Revenue, Nos. 72–1869 and 72–1870, United States Court of Appeals, 7th Cir., Jan. 5, 1973, and Ryan v. Drennen, No. 72–2006, Jan. 5, 1973, cert. denied, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 398 (1973).

On January 18, 1974 the Commissioner, pursuant to Rule 71 of the new Tax Court Rules of Practice and Procedure,[1] served on the Ryans seven written interrogatories seeking information as to any relationships or dealings by the Ryans with the Commercial Credit Bank of Zurich, Switzerland, or with one Carl W. Hirschmann, a resident of Zurich, between the years 1958 and 1965. The Ryans objected to these interrogatories on the ground, *inter alia,* that answers to the interrogatories would have a tendency to incriminate them and hence were privileged by the Fifth Amendment. In support of their objection, the Ryans asserted: (1) a massive criminal tax investigation of the Ryans had been conducted for more than 10 years; (2) Ryan had been the subject of successive criminal prosecutions beginning in 1968, the latest of which was concluded only in 1973; (3) each criminal prosecution against Ryan involved alleged foreign transactions; and (4) each of the foreign transactions involved in the prior criminal prosecutions is also involved in the Commissioner's determination of deficiencies now before the Tax Court.

The Commissioner moved the Tax Court to compel answers to the interrogatories and, after a hearing conducted on May 22, 1974, the Tax Court on May 24, 1974 entered an order providing, *inter alia,* "Petitioners are directed to answer in writing and under oath" the interrogatories propounded by the Commissioner. The Ryans appealed to this Court and subsequently filed in this Court a petition for writ of mandamus, seeking an order directing the Chief Judge of the Tax Court to vacate the order of May 24, 1974. In its response to said petition for mandamus, the Government advised us that after the appeal and mandamus petition were docketed in this Court, the Government sought and obtained from the District Court for the District of Columbia an immunity order under 18 U.S.C. §§ 6002 and 6003. This order directed the Ryans "to give testimony or provide other information and produce documents which they refuse to give or to provide on the basis of their privilege against self-incrimination as to all matters about which they may be interrogated before the United States Tax Court", and granted the Ryans use immunity with respect to testimony or other information compelled to be given or produced under the order (or any information directly or indirectly derived from such

---

1. On January 1, 1974, the new Rules of Practice and Procedure of the United States Tax Court became effective, providing, for the first time, discovery methods and procedures similar to those of the Federal Rules of Civil Procedure.

testimony or other information). An appeal by the Ryans from the use immunity order is pending in the United States Court of Appeals for the District of Columbia Circuit.

This Court on August 21, 1974 denied the Ryans' petition for a writ of mandamus. Thereafter the Commissioner filed a motion to dismiss the instant appeal for lack of jurisdiction and, in the alternative, for mootness. This Court denied the motion, without prejudice to the Commissioner's right to raise the same issues in his brief on appeal.

One or both of two threshold issues must be addressed at the outset. We must first decide whether this Court has jurisdiction to entertain this appeal from the order of the Tax Court directing the Ryans to answer the interrogatories served upon them by the Commissioner. If we decide that this Court has such jurisdiction, we must further decide whether this appeal has become moot by virtue of the use immunity granted to the Ryans by the order of the District Court entered on August 8, 1974 pursuant to 18 U.S.C. §§ 6002 and 6003.

By the Internal Revenue Code of 1954, 26 U.S.C. § 7482(a), the Congress has granted United States Courts of Appeals exclusive jurisdiction to review the decisions of the Tax Court in the same manner and to the same extent as decisions of the District Courts in civil actions tried without a jury. As a general rule Courts of Appeals have jurisdiction to review only final decisions of the District Courts, 28 U.S.C. § 1291, and the courts have held that the term "final decisions" with respect to Tax Court cases generally includes decisions which specify the amount of a deficiency or lack thereof, dismiss a petition for lack of jurisdiction, or otherwise dispose of the litigation. Licavoli v. Commissioner, 318 F.2d 281, 283 (6th Cir. 1963); Porter v. Commissioner, 453 F.2d 1231, 1232 (5th Cir. 1972); Commissioner v. S. Frieder & Sons Co., 228 F.2d 478, 480 (3rd Cir. 1955). By 28 U.S.C. § 1292, Courts of Appeals are empowered to review certain interlocutory decisions of District Courts, but the Ryans have not contended that any of these exceptional interlocutory decisions are applicable in the case at bar.

In Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929), Cogen had been indicted on a charge of conspiracy to violate the National Prohibition Act. Before the indictment, certain papers had been taken from his person without a warrant. After the indictment and before trial he applied to the District Court for an order requiring the Government to return the papers and to suppress all evidence obtained therefrom on the ground that the search and seizure had been made in violation of his constitutional rights. The application was denied. Before trial, Cogen sued out a writ of error from the Circuit Court of Appeals, which then dismissed the writ, holding that the order sought to be reviewed was interlocutory and hence not appealable. The Supreme Court granted a writ of certiorari. The sole question before the Court was whether the order of denial of the District Court was a final decision. Cogen argued that the order was final, contending that his application for surrender of the papers was a collateral matter, distinct from the general subject of the litigation; that the order thereon finally settled the particular controversy and thus fell within the exception to the general rule which limits the right of review to decisions which are both final and complete. The Supreme Court disagreed, holding:

It is not true that the order on such a motion deals with a matter distinct from the general subject of the litigation. . . . In essence, the motion resembles others made before or during a trial to secure or to suppress evidence, such as applications . . to compel the production of books or documents . . . or for a subpoena *duces tecum* . . . The orders made upon such applications, so far as they affect the rights only of parties to the litigation, are interlocutory.

. . . 278 U.S. at 223–224, 49 S.Ct. at 119.

Thus *Cogen* can be read as standing for the proposition that orders compelling discovery are non-appealable interlocutory orders.

Although the Ryans concede that "numerous cases have held that a trial court's order overruling a claim of privilege and directing answers to interrogatories or production of documents is reviewable only by way of submitting to a judgment of contempt and appealing from that judgment" (Brief of Appellants at 13), they strongly contend that the Tax Court's order rejecting their asserted Fifth Amendment privilege falls within the "collateral order" doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Ryans argue that the order falls under the *Cohen* doctrine because their claim of Fifth Amendment privilege is "separate" and "independent" from the case pending in the Tax Court in that the basis for the claim has nothing to do with the civil litigation; i. e., the basis for the claim is the *criminal* consequences that may and probably will result (Brief of Appellants at 14). We disagree.

The *Cohen* doctrine is readily distinguishable from the present issue. There, the appellate courts were confronted with a question of law which was totally independent of the issue involved in the litigation. The question—whether a deposit of security was required for the plaintiffs to proceed with the litigation— could be resolved without any reference to the substance of the action. This is in sharp contrast to the case at bar where the Ryans base their opposition to the Tax Court's discovery order partly on the grounds that the information sought by the interrogatories is not relevant to the subject matter involved in the pending case. An apt answer to this argument is supplied by the following language of the court in Borden Co. v. Sylk, 410 F.2d 843 (3rd Cir. 1969):

. . . The argument itself betrays the essentially noncollateral nature of the question, for if the propriety of the lower court's order can be determined only by making reference to the substantive litigation, then clearly it is not a "collateral" matter within the *Cohen* meaning. 410 F.2d at 846.

In the instant case the relevance of the information sought can only be resolved by reference to the substantive litigation, which concerns income tax deficiencies and fraud penalties.

The other grounds on which the Ryans base their opposition to the discovery order is that their answers to the interrogatories might tend to incriminate them. We do not minimize the importance of the Ryans' Fifth Amendment privilege, but we do not think that such claim of privilege by itself endows an interlocutory order with such importance and independence of the cause itself as to compel review. In Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), certain witnesses were directed to appear and produce documents before a special examiner designated by the Circuit Court for the District of Minnesota to hear testimony in a suit brought by the Government to enforce the Sherman Act. The witnesses refused to answer questions or produce documents, pleading, *inter alia,* the privilege of the Fifth Amendment. Upon petition by the Government, the court issued an order of compliance. Appeals from the order were then allowed to the Supreme Court, which dismissed the appeals for want of jurisdiction, holding that the order was a non-appealable interlocutory order, despite the fact that a witness who is a stranger to the litigation could not be party to an appeal taken at the conclusion of the main cause. The grounds for the decision were stated in the following language:

. . . In a certain sense finality can be asserted of the orders under review, so, in a certain sense, finality can be asserted of any order of a court. And such an order may coerce a witness, leaving to him no alternative but to obey or be punished. . . but from such a ruling it will not be

18

contended there is an appeal. Let the court go further and punish the witness for contempt of its order, then arrives a right of review, and this is adequate for his protection without unduly impeding the progress of the case. . . . This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that [time] the proceedings are interlocutory in the original suit . . . 201 U.S. at 121–122, 26 S.Ct. at 358.

Likewise, in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the Supreme Court stated:

. . . The correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction before its reconsideration by an appellate tribunal. . . . 309 U.S. at 325–326, 60 S.Ct. at 541.

See also, Cohen v. United States, supra.

Similarly, this Court has repeatedly held that an order to compel testimony and to produce documents is not an appealable order. National Nut Co. of California v. Kelling Nut Co., 134 F.2d 532 (7th Cir. 1943); Goodyear Tire & Rubber Co. v. Jamaica Truck Tire Service Co., 66 F.2d 91 (7th Cir. 1933), cert. denied, 290 U.S. 700, 54 S.Ct. 209, 78 L.Ed. 601 (1933).

In National Nut we held non-appealable an order of a District Court in Illinois in aid of a subpoena sought by the plaintiff corporation for use in its pending California suit to compel officers of the defendant corporation in the California suit to testify and produce documents. There we cited Cobbledick, supra, where the Supreme Court held that an order of a District Court denying motions to quash subpoenas duces tecum directing petitioners to appear and produce documents before a grand jury was not a "final decision", and that appeal would be allowed only from a contempt order for failure to comply.

In Goodyear, we held a lower court order directing the issuance of a subpoena non-appealable. There, we noted, as did the Supreme Court previously in Cobbledick and Alexander, that appellate review would be available if and when the witness was punished for contempt for refusing to comply. This availability of appellate review distinguishes these cases, and National Nut, from the rule of Carter Products, Inc. v. Eversharp, Inc., 360 F.2d 868 (7th Cir. 1966), where the District Court denied a motion of defendants to compel a Chicago resident to answer questions at deposition and to produce documents sought by subpoena duces tecum for use in defending a patent infringement suit pending in the United States District Court for the Southern District of California. The defendants appealed the order denying the motion to compel testimony and to produce documents, and Lerner, the witness, moved to dismiss the appeal for lack of jurisdiction on the ground that the order was not final. We held that the order was a "final decision" on the grounds that for all practical purposes this proceeding was the defendants' only chance to obtain discovery from Lerner, and that this appeal was their only opportunity for review of the District Court's order denying access to the information. Thus Carter Products, although not cited by the Ryans, is clearly distinguishable from the case at bar.

In United States v. Fried, 386 F.2d 691 (2nd Cir. 1967), a non-party witness sought appellate review of an order requiring his presence for testimony on the grounds that attendance could seriously jeopardize his health. In that case, as here, the appellant relied heavily on the holding in Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir. 1965), cert. denied, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965), which permitted an appeal by a non-party witness served with a subpoena requiring the disclosure of trade secrets. After reviewing the Covey holding, the Fried court rejected the appeal, electing instead to follow the rule of Alexander, supra, where the Su-

preme Court held that a judge's order directing a witness to answer a question in the very action pending lacks the finality required to support an appeal by the witness until he decides to risk citation for contempt and a contempt order is issued. We see no reason why the instant case should not be governed by the same rule. Although the *Covey* court said that it was "not impressed" with the argument that a mere witness "may obtain review by disobedience of the order and appeal from a subsequent order of contempt", this seems to be the very argument which persuaded the Supreme Court to dismiss the appeal in *Alexander.* So far as we can ascertain, the Supreme Court has consistently stood so persuaded. Cf. *Cobbledick, supra*; Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); United States v. Blue, 384 U.S. 251, 86 S.Ct. 1816, 16 L.Ed.2d 510 (1966); United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). Thus we agree with the Commissioner that the interrogatories which the Ryans refused to answer, and the reasons for their refusal, *viz.,* the interrogatories were not relevant to the tax controversy and their answers might tend to incriminate them, do not demonstrate any independence of the tax controversy, which involves income tax deficiencies and fraud penalties.

■ The Ryans contend, next, that the "practical effect of the [Tax Court's] order will be irreparable by any subsequent appeal" (Brief of Appellants at 15), but they neglect to specify the harm or to delineate the irreparable nature of the harm which they contend they will suffer. The force of this argument thus escapes us. The consequences of failure to obey an order of the Tax Court are no greater than refusal to obey an order of a District Court.[2] If the Ryans do not obey the Tax Court's discovery order and the Tax Court enters a contempt order for their disobedience, they can immediately appeal from such order of sanction. *Every* interlocutory order involves, to some degree, a potential loss or harm. That risk, however, must be balanced against the need for efficient federal judicial administration, the need for the appellate courts to be free from the harassment of fragmentary and piecemeal review of cases otherwise resulting from a succession of appeals from the various rulings which might arise during the course of litigation. See Borden v. Sylk, *supra; Cobbledick, supra.* The following words of Judge Aldisert, writing for the court in *Borden,* bear repeating:

. . . To accept the appellant's view is to invite the inundation of appellate dockets with what have hereto-

2. Rule 104(c) of the Rules of Practice and Procedure of the United States Tax Court, which is prescribed by authority of 26 U.S.C. § 7453, is derived from Rule 37(b), Fed.R.Civ.P., and reads as follows:

(c) *Sanctions.* If a party or an officer, director, or managing agent of a party or a person designated in accordance with Rule 81(c) fails to obey an order made by the Court with respect to the provisions of Rules 71, 72, 73, 81, 82, 83, 84, or 90, the Court may make such orders as to the failure as are just, and among others the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him

from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of the Court the failure to obey any such order.

(d) *Evasive or incomplete answer or response.* For purposes of this Rule and Rules 71, 72, 73, 81, 82, 83, 84, and 90, an evasive or incomplete answer or response is to be treated as a failure to answer or respond. In addition to the sanctions enumerated in Rule 104(c) above, 26 U.S.C. § 7456(d)(3) empowers the Tax Court to punish by fine or imprisonment, at its discretion, such contempt of its authority as is shown by disobedience or resistance to its lawful order or rule.

**20**

fore been regarded as nonappealable matters. It would constitute the courts of appeals as second-stage motion courts . . .

* * * * * *

To accept the appellant's view is also to invite a geometrical increase in the already unacceptable delay between the date of filing and trial in the metropolitan district courts. The present case, filed over three years ago and now held in abeyance pending the outcome of this appeal, is a splendid example of the Homeric proportions that such litigation can assume. Our overburdened courts have little time or appetite for such protractions. 410 F.2d at 846.

The case before us, filed over five years ago and now held in abeyance pending the outcome of this appeal, is an even more splendid example of "the Homeric proportions" that such litigation can assume. To paraphrase the words of Judge Friendly in *Fried, supra,* this is no time to weaken the historic rule putting a party's sincerity to the test of having to risk a contempt citation as a condition to appeal, however harsh its application may seem to the Ryans, who, if they are not exaggerating, will continue their refusal and if cited for contempt can, by appealing the contempt order, obtain a ruling on the validity of the Tax Court's discovery order.

Holding, as we do, that the Ryans' appeal from the order of the Tax Court must be dismissed for lack of appellate jurisdiction, we need not decide the question of mootness.

The appeal is dismissed for want of jurisdiction.