ROSENN, Circuit Judge,
concurring.
Like the majority, I believe that this case should be tried in the English courts in accordance with the forum selection clause in the Tilghman-Farmer Norton contract under which Coastal Steel claims third-party beneficiary status. I therefore join in the majority’s discussion of the merits and disposition of the case. I write separately, however, because I fear that the majority, in struggling to find a basis for appellate jurisdiction in this case, has employed an analysis that leaves in disarray doctrines of appealability that are firmly established in the law of this circuit.
The majority concludes on three different but equally shaky grounds that the bankruptcy court’s order of November 9, 1981, which the district court affirmed, is now properly before us. The majority also attempts, through a dubious path of reasoning, to circumvent the constraints arguably imposed on appellate review of bankruptcy cases by 28 U.S.C. § 1293, relying on a notion of retroactivity that I believe lacks legal foundation and logic as applied to the instant case.
*205 I fully appreciate the need for an inquiry into whether authority exists to justify appellate jurisdiction in this case. If statutes and judicial doctrines provide a reasonable basis for us to review the district court’s decision, we should not take an exceedingly narrow and technical approach to our own jurisdiction, but instead should dispose of the case on the merits. I do believe, however, that the majority’s analysis is tortuous and unnecessary. Instead, I would rely on the flexible and straightforward logic of Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), as the basis for appealability in this case.
I.
The instant case arose as part of a proceeding in the United States Bankruptcy Court for the District of New Jersey. Coastal Steel, the debtor, filed its complaint against Tilghman and the other defendants under 28 U.S.C. § 1471(b), relying on the pendency of the bankruptcy proceeding as the basis for federal subject matter jurisdiction. The bankruptcy court denied Tilgh-man’s motion to dismiss on the basis of the forum selection clause and the doctrine of forum non conveniens, and the district court granted Tilghman leave to appeal under 28 U.S.C. § 1334(b). On May 27, 1982, the district court affirmed the order of the bankruptcy court denying Tilghman’s motion, and refused to certify its own order for interlocutory appellate review under 28 U.S.C. § 1292(b). Tilghman now attempts to invoke this court’s jurisdiction, offering several possible theories for appealability.
The majority finds that appellate jurisdiction is proper under sections 1291, 1292(a), and 1651. The most serious obstacle to this conclusion is Coastal’s argument that, because this is an appeal from an action related to a bankruptcy proceeding, none of these three sections applies, and that instead we must determine whether we have jurisdiction solely in terms of the special requirements of section 1293, which is in effect during the transition period under the Bankruptcy Reform Act of 1978. Pub.L. No. 95-598, 95 Stat. 2549. The majority disingenuously manages to avoid this problem. Moreover, even assuming that it is appropriate to evaluate this case with reference to the standards for appealability of ordinary (non-bankruptcy) civil matters, I am certain that jurisdiction does not exist under section 1292, and I have grave doubts as to the applicability of sections 1291 and 1651.
A.
Coastal argues that our authority to review the orders of the bankruptcy court and the district court cannot be determined under sections 1291, 1292, or 1651, but is governed solely by 28 U.S.C. § 1293. Subsection (b) of this statute provides:
Notwithstanding section 1482 of this title, a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of an appellate panel created under section 160 or a District court of the United States or from a final judgment, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.
Coastal argues that this section totally preempts sections 1291, 1292, and 1651, and that if the order in this case is appealable, it must be in accordance with section 1293. Although sections 1292 and 1651 authorize interlocutory review in certain types of civil cases, section 1293 by its terms limits appellate jurisdiction to a “final judgment, order, or decree” of a district court or a bankruptcy court. Therefore, if section 1293 is indeed the exclusive route to the court of appeals in bankruptcy cases, Tilghman’s appeal cannot be heard unless the decision below was “final.”
In two recent cases, this circuit has described section 1293 as providing “a comprehensive and exclusive schema for jurisdiction of bankruptcy appeals.” In re Marin Motor Oil, Inc., 689 F.2d 445, 447 (3d Cir.1982), cert. denied, - U.S. -, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101 n. 3 (3d Cir.1981). As the majority correctly observes, these statements may be *206 treated as dictum for purposes of the instant case for both of these cases involved orders that were adjudged to be final. Thus, there was no need for us to consider whether section 1293 actually precluded interlocutory review. The majority summarizes several sound arguments for the view that Congress could not possibly have intended to insulate orders of the bankruptcy courts from interlocutory review by the courts of appeals. Ultimately, however, the majority avoids ruling on this question by taking refuge in the Supreme Court’s decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).
As alluded to by the majority, the Court held in Northern Pipeline that Congress acted unconstitutionally in granting bankruptcy courts the authority to entertain proceedings “relating to” bankruptcy. The effect of that decision is to require that henceforth all such proceedings be heard by the district courts under 28 U.S.C. § 1471. I believe the majority’s reliance on this case to circumvent the need to construe section 1293 is misplaced for several reasons.
First, the majority’s analysis involves a novel extension of the retroactive effect of Northern Pipeline. To prevent the havoc that would have ensued if actions taken by bankruptcy judges in good faith reliance on the statutory scheme were suddenly invalidated, the Court declared that its holding of unconstitutionality would not be retroactive. In the face of that recent unequivocal holding, the majority asserts that there is no reason not to apply the Northern Pipeline decision retroactively to this case, reasoning that since Coastal’s claims have yet to be tried, there will be no hardship to the parties in invalidating the actions taken by the bankruptcy court. But it cannot be doubted that the Supreme Court, in deciding Northern Pipeline, must have contemplated the possibility that in some cases a holding of retroactivity would cause little hardship or injustice, but nevertheless believed that in a substantial number of cases justice would not be served by making the decision retroactive. No legal basis justifies the majority’s decision to embrace “selective” retroactivity.
Second, if, despite the Supreme Court’s holding of nonretroactivity, the instant case could somehow be brought within the bounds of Northern Pipeline, an even more serious problem is created. By applying Northern Pipeline to the orders involved here, the majority succeeds only in invalidating the bankruptcy court’s order refusing to dismiss the complaint on the grounds of the forum selection clause or forum non conveniens. This order was entered on November 9, 1981, as part of a “related proceeding” that Northern Pipeline holds bankruptcy courts cannot entertain. Since the bankruptcy court thus acted beyond its authority, the inescapable conclusion is that its order is void. Admittedly, if this order had been entered after October 1, 1982, it would have been saved by Local Rule 47(C)(3) of the District of New Jersey, which provides that “orders and judgments of bankruptcy judges in civil proceedings related to cases arising under Title 11” will be effective only when they have been signed by a district judge. As the majority notes, this local rule was passed shortly after the Northern Pipeline decision to prevent disruption of such proceedings as a result of the Supreme Court’s ruling. The effect of the local rule is to transform what would have been orders of the bankruptcy courts into orders of the district courts under 28 U.S.C. § 1471(b) so that the order will have been entered by an Article III judge. But because the order of the bankruptcy court rejecting Tilghman’s motion to dismiss was entered before this local rule was passed, it cannot possibly be treated as an order entered by the district court under section 1471(b).
Whatever vitality the order possessed is attributable to it only as an order of the bankruptcy court that was appealed to and affirmed by the district court under 28 U.S.C. § 1334(b). Its life ended at the moment the rule of Northern Pipeline became applicable to such orders. The majority completely ignores this insurmountable problem: once it has held — erroneously, in my view — that Northern Pipeline applies *207 retroactively to the bankruptcy court’s order in the instant case, it has totally destroyed the validity of that order. Therefore, instead of reviewing the merits of the appeal, the majority must direct that the bankruptcy court’s unlawful order be vacated.[1]
I do not see how the orders involved in the instant case can possibly survive application of the Northern Pipeline decision. But even if they could somehow survive, I question the majority’s assumption that the difficult section 1293 problem is thereby avoided. The majority concludes that “orders entered in proceedings relating to bankruptcy are district court orders reviewable pursuant to sections 1291, 1292, and 1651.” At 200. But it is arguable that all orders in bankruptcy cases — whether entered by a bankruptcy court and then appealed to a district court under 28 U.S.C. § 1334 or entered by a district court under 28 U.S.C. § 1471(b) — are reviewable by the court of appeals only in accordance with the provisions of 28 U.S.C. § 1293. There is no basis for the majority’s implicit assumption that section 1293 only governs appeals from district court decisions where the district court was itself acting as an appellate court. Nothing in section 1293(b)’s language so limits its application. Indeed, on its face the provision appears to pertain to appeals from any district court proceeding in bankruptcy: it refers to jurisdiction over appeals from “a final judgment, order, or decree of . .. [a] District Court of the United States.” The order now before us is such a final order, regardless of the capacity in which the district court was acting when it entered the order.[2]
I fail to see why Congress’ attitude toward interlocutory appellate review in proceedings relating to bankruptcy would depend on whether the order originated in the bankruptcy court or in the district court. If section 1293(b) is indeed “a comprehensive and exclusive schema for jurisdiction of bankruptcy appeals,” In re Marin Motor Oil, supra, 689 F.2d at 447-48, then our review under the statute would be limited to final orders of the district courts.
Thus, I believe the majority has no alternative but to face directly the question whether section 1293, which does not provide for interlocutory review, sets forth the exclusive route to the court of appeals in cases relating to bankruptcy. If it is, as our prior decisions have implied, then neither section 1292 nor section 1651 is an available source for appealability in this ease.[3]
B.
Having dealt with the formidable obstacle presented by 28 U.S.C. § 1293(b) in an unsatisfactory manner, the majority concludes that we have jurisdiction over this appeal pursuant to both 28 U.S.C. § 1292 and 28 U.S.C. § 1651. Assuming that it is proper to look to these two sections as authority for jurisdiction over interlocutory *208 bankruptcy appeals, neither section provides a basis for our review. The requirements of section 1292(a) cannot be met, notwithstanding the strained analogies the majority employs. And I have considerable doubts whether this is a proper case for review by mandamus.
1. Section 1292(a) and the Enelow-Ettel-son Doctrine
Section 1292(a) provides for jurisdiction over interlocutory appeals involving district court orders “granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.” It cannot be seriously maintained that the bankruptcy court’s order denying Tilgh-man’s request to dismiss the case in accordance with the forum selection clause, or alternatively on the ground of forum non conveniens, is an order denying an injunction. Instead, the majority relies on the so-called Enelow-Ettelson doctrine, Enelow v. New York Life Insurance Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); Ettelson v. Metropolitan Life Insurance Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), under which a request to stay an action at law pending resolution of an equitable defense is considered analogous to a request for an injunction. The majority concludes that the instant case comes within the Ene-low-Ettelson rule because Tilghman’s motion to dismiss the action in order to give effect to a forum selection clause is “analytically indistinguishable from a motion to stay an action at law pending arbitration.” At 194-195. In essence, the majority’s argument is that Tilghman’s motion is analogous to another type of motion which, according to the Supreme Court, is itself sufficiently analogous to a request for an injunction to come under section 1292. I do not believe that this argument can withstand scrutiny.
Professor Moore explains the Enelow-Et-telson doctrine as follows:
If an initial action is filed that could formerly have been maintained only at law, and if a stay of that action is sought to permit advance determination of matter that could formerly have been urged only by bill in equity, an order granting or denying the stay is appealable as an injunction under 28 U.S.C. § 1292(a)(1).
9 J. Moore, B. Ward & J. Lucas, Moore’s Federal Practice ¶ 110.20[3], at 242 (1983) (footnote omitted). It is settled that one type of motion appealable under the Ene-low-Ettelson doctrine is a motion to stay an action pending arbitration of issues that the defendant contends are subject to an arbitration agreement. In Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935), the Supreme Court held that the defense setting up the arbitration agreement is in the nature of an equitable defense, and that the grant or denial of a stay sought under the United States Arbitration Act is therefore appealable, provided the action sought to be stayed is legal in nature. But as I see the cases, the Court has demonstrated a reluctance to expand the contours of this doctrine, preferring to keep Enelow-Ettelson as a narrow modification of the injunction exception to the finality requirement. The Court has indicated that the Enelow-Ettelson rule should not be extended into new areas on “merely logical grounds.” 9 Moore’s Federal Practice, supra, at 252. For example, in Baltimore Contractors v. Bodinger, 348 U.S. 176, 184, 75 S.Ct. 249, 254, 99 L.Ed. 233 (1955), the Court was not persuaded to extend the rule merely because of “incongruities” that arise out of “the persistence of outmoded procedural differentiations.” Rather, the Court concluded that “it is better judicial practice to follow the precedents which limit appeal-ability of interlocutory orders, leaving Congress to make such amendments as it may find proper.” Id. at 185, 75 S.Ct. at 254.
Most courts have declined to extend the Enelow-Ettelson rule beyond the precise situations in which the Supreme Court has approved it. As a result, the Enelow-Ettel-son rule is employed principally to permit appeals from “two kinds of orders: (1) orders granting or denying trial by jury; and (2) orders staying or refusing to stay pending actions until issues involved in them are referred to arbitration.” 9 Moore’s Federal *209 Practice, supra, at 240. But in numerous other seemingly similar situations the rule has not been applied. For example, an order granting or denying a stay of litigation pending administrative agency action is not appealable under the Enelow-Ettel-son rule. Allied Air Freight, Inc. v. Pan American World Airways, Inc., 340 F.2d 160, 161 (2d C3r.), cert. denied, 381 U.S. 924, 85 S.Ct. 1560, 14 L.Ed.2d 683 (1965). Moreover, when a district court stays an action pending before it to await developments in another action previously commenced involving the same issues, or to compel the parties to bring a separate court action, the Enelow-Ettelson rule is inapplicable. See 9 Moore’s Federal Practice, supra, at 251.
In the instant case, the majority disregards the Supreme Court’s warnings as well as the prevailing view that the Enelow-Et-telson doctrine, itself an analogy, is not to be extended by further analogy. But even if analogical reasoning is proper, the majority inexplicably leaps to the conclusion that this case is “analytically indistinguishable” from a ease involving a motion to stay pending arbitration. It is important to remember that the theory behind the Enelow-Ettelson doctrine is that the moving party is seeking to have the proceedings at law held in abeyance pending resolution of his equitable defense. Abeyance is not sought here because the court is asked to surrender jurisdiction absolutely. Tilghman seeks not to have an equitable defense (such as an arbitration agreement) resolved outside the bankruptcy courts. It requests that the underlying dispute be sent to the English courts for final determination of all claims and defenses. This is a crucial distinction. Moreover, since the contemplated proceedings before the English courts would themselves be in the nature of an action at law, Tilghman’s defense is not equitable in nature. See Anderson v. United States, 520 F.2d 1027, 1029-30 (5th Cir.1975); Wallace v. Norman Industries, Inc., 467 F.2d 824, 827 (5th Cir.1972).
It is true, as the majority indicates, that a decision to defer to a non-arbitral tribunal sometimes will come within the Enelow-Et-telson rule. But this is only when the deferring court still retains jurisdiction over the matter pending resolution of an equitable defense. This is not the situation here. Neither the majority nor Tilghman has cited any case in which a court extended the Enelow-Ettelson rule to a situation where dismissal was sought on the basis of forum non conveniens or a forum selection clause.[4] Thus, in my view section 1292(a) affords no basis for appellate jurisdiction in this case.
2. Section 1651 and Mandamus
The majority also relies on 28 U.S.C. § 1651 as a basis for interlocutory review in this case. This section gives the courts of appeals discretionary power to issue writs in aid of their potential jurisdiction. I do not disagree with the majority’s holding that we can sua sponte invoke our discretionary power under section 1651. But I am not convinced that, under the law of this circuit, this case is appropriate for mandamus.
It is hornbook law that the writ of mandamus is an “extraordinary” remedy “reserved for exceptional circumstances.” 9 Moore’s Federal Practice, supra, ¶ 110.28 at 302. Mandamus is clearly not a substitute for an appeal. See NLRB v. Interstate Dress Carriers, Inc., 610 F.2d 99, 104 (3d Cir.1979). The general guiding principle is that mandamus is appropriate in cases involving serious abuse of discretion by the district court. See Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, G.m.b.H., 658 F.2d 944, 951 (3d Cir.1981).
*210 Our circuit has shown considerable unwillingness to use mandamus to review district court decisions on motions to transfer venue. There is little doubt that mandamus is available in cases where the district court was “patently in error with respect to its power to transfer ... or simply refused to consider the merits of the transfer request.” 9 Moore’s Federal Practice, supra, at 176. But where the district court does consider the merits of the transfer motion, we have held that mandamus is not available to review the contention that the district court abused its discretion. In All States Freight, Inc. v. Modarelli, 196 F.2d 1010 (3d Cir.1952), we explained,-
Every litigant against whom the transfer issue is decided naturally thinks the judge was wrong. It is likely that in some cases an appellate court would think so, too. But the risk of a party being injured either by the granting or refusal of a transfer order is, we think, much less than the certainty of harm through delay and additional expense if these orders are to be subjected to interlocutory review by mandamus.
Id. at 1012. This restrictive view still prevails. See Wood v. Zapata Corp., 482 F.2d 350, 357 (3d Cir.1973); Solomon v. Continental American Life Insurance Co., 472 F.2d 1043 (3d Cir.1973). The Supreme Court has also indicated that mandamus is not an appropriate way to review allegations of abuse of discretion. See Will v. Calvert Fire Insurance Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978); Parr v. United States, 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956).
The instant case falls squarely within the rationale of All States Freight. Both the bankruptcy court and the district court examined the factors relevant to the decision whether to dismiss the case on account of the forum selection clause, or on forum non conveniens grounds. The issue on appeal is whether these courts made a correct assessment of these factors. This is the kind of judgment that under our cases cannot be reviewed by means of section 1651.
C.
Section 1291 of Title 28 pertains to review of final decisions of the district courts. As noted above, although this provision technically may not be applicable to proceedings in bankruptcy, judicial interpretations of the finality requirement under section 1291 have been applied to section 1293. The majority relies on the so-called collateral order doctrine in finding that the district court’s order is final and therefore reviewable under section 1291. I am not convinced that this order possesses the necessary elements of collateral finality to bring it within that doctrine of appealability.
The collateral order doctrine traces its roots to Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In the broadest sense, Cohen established that section 1291 allows appeals from a judgment which is final in effect, even though it may not terminate an action. Recently, in Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Court articulated the collateral order doctrine in terms of a three-part test:
To come within the “small class” of decisions excepted from the final-judgment rule by Cohen, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.
Id. at 468, 98 S.Ct. at 2457. See also Moses H. Cone Memorial Hospital v. Mercury Construction Corp., - U.S. -, - -, 103 S.Ct. 927, 935, 74 L.Ed.2d 765 (1983); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); Yakowicz v. Comm. of Pennsylvania, 683 F.2d 778 (3d Cir.1982).
The majority holds that although Tilgh-man’s forum non conveniens contention does not satisfy the elements of the collateral order doctrine, the request for enforcement of the contractual forum selection clause does fall within the class of orders reviewable under Cohen. Our circuit has *211 made clear that the Cohen doctrine is to be applied narrowly. See Rogers v. United States Steel Corp., 508 F.2d 152, 159 (3d Cir.), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); Borden Co. v. Sylk, 410 F.2d 843 (3d Cir.1969). See also Yakowicz, supra, 683 F.2d at 783 n. 10. We also have stated that each of the three Coopers elements is necessary for the doctrine to apply. Yakowicz, supra, 683 F.2d at 783. A serious question exists whether two of the three Coopers & Lybrand factors are satisfied in this case.
First, I am not convinced that the order denying the motion to dismiss on the ground of the forum selection clause resolves “an important issue completely separate from the merits of the action,” as Coopers & Lybrand requires. It is true, as the majority indicates, that the contractual forum clause establishes a legal right that is analytically distinct from the legal rights at issue in the underlying litigation. But the test of a collateral order is not whether the various asserted legal rights are related, but whether the same body of facts must be considered in evaluating those legal rights. As the Supreme Court explained in Coopers & Lybrand, supra, a collateral order is one that not only concerns an issue “completely separate from the merits,” 437 U.S. at 468, 98 S.Ct. at 2458, but does not even “involve[] considerations ... ‘enmeshed in the factual and legal issues comprising the plaintiffs cause of action.’ ” Id. at 469, 98 S.Ct. at 2458 (quoting Mercantile National Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)). Our own cases have been totally faithful to this view. See Eastern Maico Distributors v. Maico-Fahrzeugfabrik, supra; Forsyth v. Kleindienst, 599 F.2d 1203 (3d Cir.1979), cert. denied, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981) (finding the collateral order test satisfied because the question of immunity from suit was totally unconnected with the merits of the action); Borden Co. v. Sylk, supra.
The majority acknowledges that, in determining whether to enforce a forum selection clause, the court must refer to the merits of the underlying dispute. In order to rule on Tilghman’s motion to dismiss, both the bankruptcy court and the district court had to decide whether enforcement of the forum clause would be unreasonable or unjust. This depended on whether trial in the contractual forum would be “so gravely difficult and inconvenient” as effectively to .deny Coastal Steel its day in court. See The Bremen v. Zapata Offshore Co., 407 U.S. 1, 18, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972). This inevitably required the bankruptcy court and the district court to plunge into the merits in order to determine what items of evidence would likely be probative in the case and where that evidence was located, as well as to make judgments concerning the potential hardship to each party of trial in the other’s preferred forum. For example, the motion required the court to balance the materiality of the testimony to be given by the witnesses located in England against the materiality of the testimony of witnesses in the United States.[5] In this regard, the question of whether the forum selection clause should be enforced is identical to the forum non conveniens issue: both issues would require us to consider the merits of the underlying dispute in order to identify the practical problems facing the parties in each potential forum.
I also have considerable doubts concerning the majority’s treatment of the third Coopers & Lybrand factor — whether the order appealed from can be effectively reviewed on appeal from final judgment. The question here is whether “an important right will be lost, probably irreparably, if review must await a final judgment.” Chrysler Corp. v. Fedders Corp., 670 F.2d 1316, 1318 n. 2 (3d Cir.1982). The majority *212 appears to disclaim any belief that the forum selection clause confers a type of absolute immunity from being subjected to legal proceedings in an American forum, a right which by nature could only be vindicated before trial. Instead, the majority asserts that unless the district court’s ruling on the forum selection clause is reviewed at this juncture, an erroneous and prejudicial decision not to enforce the clause may escape review after final judgment. To reach this result, the majority relies upon an old, obscure statute, 28 U.S.C. § 2105 (1976), which provides that the court of appeals may not reverse a district court “for error in ruling upon matters in abatement which do not involve jurisdiction.” The majority suggests that we would apply this statute and would refuse to grant relief to Tilgh-man if it should lose on the merits after being improperly subjected to trial in this country.
Under the majority’s analysis, section 2105 would appear to present a significant restriction on our appellate review of judgments rendered after trial. If so, then one would expect the statute to be the focus of numerous court decisions and much scholarly comment. Yet Professors Wright, Miller, and Cooper — whose treatise is one of the few secondary authorities giving any consideration at all to this statute — describe it quite candidly as “one of the most commonly ignored provisions of the Judicial Code” and say that its “most important feature ... is certainly its disuse.” See 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3903 at 412, 413 (1976). It is sheer speculation for the majority to suggest that we suddenly might seize on this obscure and ambiguous statutory provision to preclude post-trial review of Tilghman’s forum selection clause argument.
More important, I am very concerned about the implications of the majority’s analysis upon our appellate jurisdiction over orders which are undoubtedly final. Under the majority’s reading, section 2105 might preclude from appellate review, on appeal from a final order, a wide range of issues, such as whether the district court should have abstained or deferred to either state, administrative, or private proceedings. See United States v. Alcon Laboratories, 636 F.2d 876, 885 (1st Cir.1981), cert. denied, 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981). Wright, Miller & Cooper suggest that the reason why section 2105 has been commonly ignored is probably that it runs at odds with modern conceptions of appellate jurisdiction. See C. Wright, A. Miller & E. Cooper, supra. 1 think it would be extremely shortsighted to elevate this statute from a position of obscurity to a major limitation on appealability merely for the sake of molding the case to fit the collateral order doctrine. In my view, if section 2105 is to be resurrected, it should be done in a case where the issue is directly presented.[6]
II.
I understand fully the laudable reasons that motivate the majority in reaching the merits of this appeal and I share them. We are constrained, however, as a court of law, by statutory and judicial principles that regrettably do not permit us to apply the narrow collateral order doctrine, section 1292(a), or section 1651. But we can exercise appellate jurisdiction in this case on a straightforward basis under the rule of Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). Gillespie established that a court of appeals may review an order which is within the “twilight zone of finality,” even though not *213 strictly within 28 U.S.C. § 1291, where the circumstances warrant appellate review. Explaining that the finality requirement was to be given a “practical rather than a technical construction,” id. at 152, 85 S.Ct. at 310 (quoting Cohen v. Beneficial Industrial Loan Corp., supra, 337 U.S. at 546, 69 S.Ct. at 1225), the Court said in Gillespie that
in deciding the question of finality the most important competing considerations are “the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.” Such competing considerations are shown by the record in the case before us. It is true that the review of this case by the Court of Appeals could be called “piecemeal”; but it does not appear that the inconvenience and cost of trying this case will be greater because the Court of Appeals decided the issues raised instead of compelling the parties to go to trial with them unanswered.. .. And it seems clear now that the case is before us that the eventual costs, as all the parties recognize, will certainly be less if we now pass on the questions presented here rather than send the case back with those issues undecided.... We think that the questions presented here are ... “fundamental to the further conduct of the case.”
379 U.S. at 152-54, 85 S.Ct. at 310-312. The rationale of Gillespie has been relied upon by the courts of appeals to justify jurisdiction in appropriate cases. See, e.g., Ingalls Shipbuilding Division v. White, 681 F.2d 275 (5th Cir.1982); United States v. Mississippi Power & Light Co., 638 F.2d 899 (5th Cir.), cert. denied, 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1981); Wescott v. Impresas Armadoras, S.A. Panama, 564 F.2d 875 (9th Cir.1977).
Admittedly, the power recognized in Gillespie is somewhat extraordinary and accordingly should be used sparingly. Nevertheless, because the Gillespie rule gives appellate courts much discretion in deciding whether to review district court orders, I believe it furnishes a sound basis for jurisdiction in the instant ease. As in Gillespie, the order appealed from cannot be fit within the literal terms of section 1291, nor does it seem to possess the necessary features of finality as a collateral order under the Cohen doctrine. Yet, as in Gillespie, circumstances clearly warrant our review. The questions presented in this appeal are “fundamental to the further conduct of the case” because they concern the appropriateness of an American forum. By reversing the district court on the merits, we rule that the litigation should not go forward in our courts. As we have indicated in another context, “[T]he interest of the fair and prompt administration of justice is better served by ordering this case dismissed immediately, than by refusing to do so in order to discourage piecemeal appeals.” First Jersey Securities, Inc. v. Bergen, 605 F.2d 690, 702 (3d Cir.1979), cert. denied, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). In light of the reality of the situation, I think the order appealed from is sufficiently within the “twilight zone of finality” to warrant immediate appellate review under Gillespie.
Accordingly, on this basis I too would deny Coastal’s motion to dismiss the appeal.
III.
I join in parts IV and V of the majority’s discussion of the merits of the appeal. I also join in its disposition of the case as set forth in part VI.

. This problem demonstrates precisely why the Supreme Court must have elected not to make its Northern Pipeline decision retroactive. In the wake of that decision, it was relatively easy for the federal district courts to adopt local rules for the processing of future bankruptcy cases. But there was no way for the federal judiciary to validate retroactively those bankruptcy court orders entered prior to Northern Pipeline and appealed to the district courts under 28 U.S.C. § 1334(b). To prevent these orders from being suddenly invalidated, the Court had no choice but to make its decision nonretroactive.

. I recognize that, as the statute is written, Congress apparently did not expect the district courts to exercise jurisdiction under 1471(b), as section 1471(c) appears to require that bankruptcy-related cases be brought first in a bankruptcy court. See Northern Pipeline, supra, 102 S.Ct. at 2862. Congress may have expected that section 1293(b) would be used in conjunction with section 1334. But I do not believe we can conclude that Congress intended section 1293 not to apply in conjunction with section 1471.

.Technically, of course, section 1291 appellate jurisdiction would also be unavailable. However, section 1291 itself contains a finality requirement, and several courts, including our own, have grafted onto section 1293(b) the qualifications on the finality rule that have been developed by the courts under 28 U.S.C. § 1291. See In re Marin Motor Oil, Inc., supra; In re Regency Woods Apartments, Ltd., 686 F.2d 899, 902 (11th Cir.1982); In re Callister, 673 F.2d 305, 306 (10th Cir.1982).

. The majority suggests that appellate jurisdiction in the instant case rests on the same basis as appellate jurisdiction in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). This is not correct. Both Scherk and Bremen involved motions to stay the proceedings pending the termination of ongoing proceedings elsewhere, and in both of these cases the district courts had enjoined the defendants from further participation in the proceedings in the other forum. Thus, these cases were appealable under 28 U.S.C. § 1292(h) as orders granting injunctions, totally apart from the Enelow-Ettelson rule.

. Similarly, an inquiry into the merits was essential in order to determine whether an inspection of the blast equipment located in New Jersey would be such a central part of the evidence on the underlying contract claim that it justified disregarding the forum clause of the agreement.

. In addition, it should be pointed out that the majority has implicitly assumed that 28 U.S.C. § 2105 applies only to writs of error after a full trial, not to appeals from collateral orders issued prior to trial. There is nothing in the language of the statute, nor in the scant authority on this section, that so limits its application. It would seem to me that if this statute does limit our review of final orders, as the majority suggests, it makes no difference whether the order was final because the case had been fully disposed of or final because it fell under the collateral order doctrine.