288 F.3d 83
 In re FLAT GLASS ANTITRUST LITIGATION (MDL No. 1200).
Brian S. Nelson, d/b/a Jamestown Glass Service; Mel's Auto Glass, Inc.; A. Waxman & Co., on behalf of itself and all others similarly situated; Designer Windows, Inc., on behalf of itself and all others similarly situated; Moses Moore All Glass Aspects, Inc., on behalf of itself and all others similarly situated; AAA Glass, Inc., on behalf of itself and all others similarly situated, d/b/a The Glass Doctor; The Lurie Companies, Inc.; VSTB Enterprises, Inc., d/b/a Perfecto Auto Glass & Upholstery and its successors; Port City Glass & Mirror, Inc., on its own behalf and on behalf of all others similarly situated; John Healy, Jr.; County Auto Glass, Inc., on behalf of themselves and all others similarly situated; Gerard J. Clabbers, on behalf of himself and all others similarly situated; Kirschner Corporation, Inc., t/a Berwyn Glass Company, on behalf of itself and all others similarly situated; Hartung Agalite Glass Co., d/b/a Hartung Glass Industries; All Star Glass, Inc., on behalf of itself and all others similarly situated; Superior Windshield Installation, Inc., on its own behalf and on behalf of all others similarly situated; Jovi, Inc., on behalf of itself and all others similarly situated, t/a Easton Area Glass; Engineered Glass Walls, Inc., on behalf of itself and all others similarly situated; Bailes Glass Co.; Interstate Glass Distributors, Inc., on behalf of itself and all others similarly situated; Orlando Auto Top, Inc.; Mayflower Sales Co., Inc., on behalf of itself and
all others similarly situated; Cardinal IG; Reed's Body Shop, Inc.; Beletz Brothers Glass Company, Inc.; Complast, Inc.; Western States Glass, on behalf of itself and all others similarly situated; Grimes Auto Glass, Inc.; D & S Glass Services, Inc.; George Brown & Son Glass Works, Inc.; Thermal Chek, Inc.; Mobile Glass, Inc., individually and as a representative of a class; Jeld-Wen, Inc., an Oregon corporation; Jeld-Wen Canada Limited, a Canadian corporation; Jeld-Wen Arizona, Inc., an Arizona corporation; Avanti Industries, Inc., an Arizona corporation; Lakewood City Glass, Inc.; Carolina Mirror; Allstate Insurance Company; Allstate Indemnity Company,
v.
Pilkington PLC; Pilkington Libbey-Owens-Ford Co., Inc.; AFG Industries, Inc.; Guardian Industries Corporation; PPG Industries, Inc.; Libbey-Owens-Ford Co., Inc.; Ashai Glass Co., Ltd.; Ford Motor Co.; Pilkington Holdings; Ashai Glass America, Inc.; United States of America (Intervenor in D.C.) (D.C. No. 97-mc-00550).
*Edward Bryant, Appellant,
*Ronald W. Skeddle, Appellant. *Pursuant to Rule 12(a), F.R.A.P.
 No. 01-3081.
 No. 01-3091.
 United States Court of Appeals, Third Circuit.
 Argued December 13, 2001.
 Filed April 26, 2002.
 
 J. Michael Murray (Argued), Berkman, Gordon, Murray & DeVan, Cleveland, OH, Attorney for Appellant, Edward Bryant.
 Michael S. Sommer (Argued), McDermott, Will & Emery, New York, NY, Attorney for Appellant, Ronald W. Skeddle.
 David E. Romine (Argued) Fine, Kaplan & Black, Philadelphia, PA, Robert N. Kaplan, Kaplan, Fox & Kilsheimer, New York, NY, Attorneys for Appellees, Brian S. Nelson, d/b/a Jamestown Glass Service; Mel's Auto Glass, Inc.; A. Waxman & Co., on behalf of itself and all others similarly situated; Designer Windows, Inc., on behalf of itself and all others similarly situated; Moses Moore All Glass Aspects, Inc., on behalf of itself and all others similarly situated; AAA Glass, Inc., on behalf of itself and all others similarly situated, d/b/a The Glass Doctor; The Lurie Companies, Inc.; VSTB Enterprises, Inc., d/b/a Perfecto Auto Glass & Upholstery and its successors; Port City Glass & Mirror, Inc., on its own behalf and on behalf of all others similarly situated; County Auto Glass, Inc., on behalf of themselves and all others similarly situated; Gerard J. Clabbers, on behalf of himself and all others similarly situated; Kirschner Corporation, Inc., t/a Berwyn Glass Company, on behalf of itself and all others similarly situated; All Star Glass, Inc., on behalf of itself and all others similarly situated; Superior Windshield Installation, Inc., on its own behalf and on behalf of all others similarly situated; Jovi, Inc., on behalf of itself and all others similarly situated, t/a Easton Area Glass; Engineered Glass Walls, Inc., on behalf of itself and all others similarly situated; Bailes Glass Co.; Interstate Glass Distributors, Inc., on behalf of itself and all others similarly situated; Mayflower Sales Co., Inc., on behalf of itself and all others similarly situated; Cardinal IG; Reed's Body Shop, Inc.; Beletz Brothers Glass Company, Inc.; Complast, Inc.; Western States Glass, on behalf of itself and all others similarly situated; Grimes Auto Glass, Inc.; D & S Glass Services, Inc.; George Brown & Son Glass Works, Inc.; Thermal Chek, Inc.
 David J. Hickton, John G. Wall, Burns, White & Hickton, Pittsburgh, PA, Peter S. Ehrlichman, Michael K. Vaska, Foster, Pepper & Shefelman, Seattle, WA, Attorneys for Appellees, Jeld-Wen, Inc., an Oregon corporation; Jeld-Wen Canada Limited, a Canadian corporation; Jeld-Wen Arizona, Inc., an Arizona corporation; Avanti Industires, Inc., an Arizona corporation.
 David J. Armstrong, Dickie, McCamey & Chilcote, Pittsburgh, PA, Paul M. Dodyk, Cravath, Swaine & Moore, New York, NY, Attorneys for Appellee, PPG Industries, Inc.
 Before: SCIRICA and BARRY, Circuit Judges, and MUNLEY, District Judge.**
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 This is an appeal from an order compelling document production from a nonparty witness in a consolidated, multidistrict class action. The principal issue is whether a nonparty witness may appeal a discovery order without a citation for contempt.
 
 I.
 
 2
 In 1995, a federal grand jury indicted Ronald Skeddle and Edward Bryant for conspiracy, mail and wire fraud, and money laundering. Skeddle had been president and chief executive officer of Libbey-Owens Ford Co., the second-largest flat glass manufacturer in the United States. Bryant was Libbey-Owens Ford's second-highest ranking officer. All criminal charges against them were either dismissed or resulted in acquittal. But at their trial in 1997, Skeddle and Bryant accused Libbey-Owens Ford of conspiring to fix, maintain, and stabilize the price of all glass products sold in interstate and foreign commerce.
 
 
 3
 Federal prosecutors in different jurisdictions investigated the antitrust allegations against Libbey-Owens Ford. In 1998, under grants of immunity, Skeddle testified before a grand jury in the Northern District of Texas, and Bryant testified before a grand jury in the Eastern District of Michigan. The grand juries disbanded without returning indictments.
 
 
 4
 In 1997, several private antitrust suits were filed alleging Libbey-Owens Ford and other flat glass manufacturers violated the Sherman Act and the Clayton Act. The Judicial Panel on Multidistrict Litigation consolidated and transferred the actions to the Western District of Pennsylvania, which certified a class of individuals and entities who purchased flat glass products or automotive replacement glass from defendants between August 1, 1991 and December 31, 1995. In re Flat Glass Antitrust Litig., 191 F.R.D. 472 (W.D.Pa.1999). The amended complaint alleges defendants concealed a price-fixing conspiracy until Skeddle and Bryant exposed it during their criminal trial. In February 2000, the District Court approved settlements between the class and four defendants. In re Flat Glass Antitrust Litig., No. 97-550, MDL No. 1200 (W.D.Pa. Feb.9, 2000). But the class still has certain outstanding claims.
 
 
 5
 In March 2001, class plaintiffs served subpoenae duces tecum on Skeddle and Bryant for depositions and documents. Neither Skeddle nor Bryant is a defendant in what remains of the consolidated class action. At deposition both men invoked their Fifth Amendment privileges against self-incrimination. Plaintiffs' motions to compel were denied. After plaintiffs served Skeddle a second subpoena, Skeddle and Bryant produced certain documents, but withheld others on attorney-client or work-product-doctrine grounds. Each produced a privilege log.
 
 
 6
 In June 2001, plaintiffs filed a motion to compel Skeddle and Bryant to produce documents for which they claimed attorney-client privileges. Denying the motion, the District Court ordered production of other attorney-work-product documents, finding plaintiffs had shown a "substantial need," for which "substantial equivalent[s]" could not be obtained without "undue hardship."[1] This appeal followed.[2]
 
 II.
 
 7
 Generally, discovery orders are not final orders reviewable under 28 U.S.C. § 1291. At issue here is whether an order compelling a nonparty to produce documents allegedly protected by the attorney-work-product doctrine may be appealed. If not, we lack jurisdiction to consider these appeals unless Skeddle and Bryant are found in contempt of court.
 
 A.
 
 8
 Ordinarily we review final decisions of district courts. 28 U.S.C. § 1291.[3] The finality requirement advances our interest in avoiding "piecemeal appeals" during ongoing proceedings. Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). More than sixty years ago, the Supreme Court said the finality rule accords with the policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its inception to entry of judgment." Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940). The finality rule promotes efficient administration. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).
 
 
 9
 In Cobbledick, the Supreme Court established that a nonparty witness subpoenaed to testify before a grand jury must be held in contempt before challenging the order. 309 U.S. at 328, 60 S.Ct. 540. An adjudication of contempt, the Court found, provides the finality necessary to initiate an appeal. Id. The Cobbledick Court cited and relied upon Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), in which nonparties to a Sherman Act case refused to submit subpoenaed documents. In Alexander, the Supreme Court held that finality was established only if the nonparties stood in contempt. Id. at 121-22, 26 S.Ct. 356 ("Let the court go farther, and punish the witness for contempt of its order, — then arrives a right of review.... This power to punish being exercised, the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory in the original suit.").
 
 
 10
 Instead of refusing to comply with the District Court's discovery order, Skeddle and Bryant brought this appeal. They contend Cobbledick applies only to ongoing grand jury deliberations, which must be shielded from interruption caused by peripheral appeals. But the rule is broader than appellants acknowledge. It also applies in civil cases. In several instances we have held nonparty witnesses must be held in contempt before seeking appellate review. E.g., Gross v. G.D. Searle & Co., 738 F.2d 600, 603-04 (3d Cir.1984); DeMasi v. Weiss, 669 F.2d 114, 121 (3d Cir. 1982); Borden Co. v. Sylk, 410 F.2d 843, 846 (3d Cir.1969). Clearly in grand jury cases, denying interlocutory appeals discourages "[o]pportunit[ies] for obstructing the orderly progress of [the] investigation." Cobbledick, 309 U.S. at 327, 60 S.Ct. 540. But outside the grand jury context, nonparties must still stand in contempt for finality. In DeMasi, we said, "A non-party witness may not obtain appellate review of the mere issuance of a discovery order requiring production of information.... The non-party witnesses thus have a remedy by appeal, but that right must await their willingness to stand in contempt of the district court's order." 669 F.2d at 122. In Cunningham v. Hamilton County, 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999), the Supreme Court said, "[A] witness subject to a discovery order, but not held in contempt, generally may not appeal the order." Id. at 204 n. 4, 119 S.Ct. 1915 (citing Cobbledick and Alexander).[4]
 
 B.
 
 11
 Notwithstanding the contempt requirement, Skeddle and Bryant contend we have jurisdiction under the collateral order doctrine. In Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court exempted from the finality requirement a "small class" of decisions "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. at 546, 69 S.Ct. 1221. Later, the Court established a three-part test for determining whether an order qualifies for immediate review. The order must (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the action"; and (3) "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Each criterion must be satisfied. Firestone Tire, 449 U.S. at 376, 101 S.Ct. 669.[5]
 
 
 12
 The District Court's order requires Skeddle and Bryant to produce "protected" documents immediately. Once they comply, appellants suggest, they will forfeit the attorney-work-product privilege and will not be able to protect the information. In their view, a challenge raised after the class action is "final" would be useless. Furthermore, as nonparties, Skeddle and Bryant would not have standing to challenge the ultimate disposition of the class action.
 
 
 13
 Whether directed to a party or a nonparty, discovery orders to produce protected or privileged material may be effectively unreviewable after disposition of the underlying case. This is so because the information has already entered the public domain.[6] Under the collateral order doctrine, a party can usually obtain interlocutory review. But we have required a nonparty to stand in contempt in order to bring an interlocutory appeal. We have grafted on the contempt requirement to ensure nonparties have a definite stake in the litigation. As we have stated, "The contempt order effectively transforms the `interlocutory' into the `final' by giving the [nonparty] witness a distinct and severable interest in the underlying action." United States v. Sciarra, 851 F.2d 621, 628 (3d Cir.1988); In re Grand Jury (Schmidt), 619 F.2d 1022, 1025 (3d Cir.1980) (describing a nonparty's "contempt route to a final order").[7] The rationale of the United States Court of Appeals for the Fourth Circuit is instructive:
 
 
 14
 Courts have long recognized that a party sufficiently exercised over a discovery order may resist that order, be cited for contempt, and then challenge the propriety of the discovery order in the course of appealing the contempt citation. Indeed, the Supreme Court has pointed to this path to appellate review as a reason why discovery orders are not appealable under Cohen. Firestone Tire, 449 U.S. at 377, 101 S.Ct. 669. We recognize, of course, that the contempt route is a difficult path to appellate review, and one that may carry with it a significant penalty for failure. In discovery disputes, however, this difficulty is deliberate.
 
 
 15
 MDK, Inc. v. Mike's Train House, Inc., 27 F.3d 116, 121 (4th Cir.1994) (citations omitted).[8] Judge Friendly provided additional justification for the contempt requirement:
 
 
 16
 Both sides benefit from having a second look. The person ordered to respond may decide ... that the importance of the issue and the risk of adverse appellate determination do not warrant being branded as a contemnor. Conversely the person seeking the information ... may decide that the quest is not important enough to seek a contempt citation, thereby entailing the delay of an appeal....
 
 
 17
 Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch., 591 F.2d 174, 180 (2d Cir.1979).
 
 
 18
 Here appellants may decline to comply with the discovery order. If they are found in contempt, they may appeal the citation and argue the discovery order was flawed.[9] Accord United States v. Fried, 386 F.2d 691, 694 (2d Cir.1967) ("[W]e know of no instance in which the Supreme Court has reflected on the holding in Alexander that a judge's order directing a witness to answer a question in the very action pending lacks the finality required to support an appeal by the witness until he decides to risk citation for contempt and a contempt order is made.").
 
 
 19
 The Supreme Court has cautioned that the collateral order doctrine should be used sparingly. E.g., Cunningham, 527 U.S. at 200, 119 S.Ct. 1915 (order sanctioning an attorney for discovery abuse not immediately appealable); Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 872, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (describing the conditions as "stringent"). As the parties suggest, we have asserted jurisdiction under the collateral order doctrine in cases concerning the attorney-work-product privilege. But those cases did not involve nonparty witnesses. E.g., Pearson v. Miller, 211 F.3d 57, 64 (3d Cir.2000); Montgomery County v. Microvote Corp., 175 F.3d 296, 300 (3d Cir.1999); Ford Motor Co., 110 F.3d at 958-64. We have not exercised appellate jurisdiction over similar claims by nonparties. Cf. In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 800 (3d Cir.1979);[10] Borden Co., 410 F.2d at 845-46.[11]
 
 
 20
 Nonparties challenging discovery orders requiring the production of documents allegedly protected by the attorney-work-product doctrine must stand in contempt. Because Skeddle and Bryant have failed to do so, we have no jurisdiction to consider their appeals.[12]
 
 III.
 
 21
 Alternatively, the parties contend we should treat the notice of appeal as a petition for mandamus. But a writ of mandamus only issues when "the party seeking the writ has no other adequate means to attain the relief he desires" and "the court below has committed a clear error of law." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1118 (3d Cir.1986) (quotations and citations omitted). The first factor is not satisfied. Skeddle and Bryant can "attain relief" by standing in contempt. We need not consider whether the District Court committed a "clear error of law." As the Supreme Court has noted, "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Kerr v. U.S. Dist. Ct. for N. Dist. of Cal., 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976).
 
 IV.
 
 22
 We understand transcripts of Skeddle's and Bryant's testimonies before the grand juries have become available to the District Court. As the District Court continues to exercise jurisdiction over discovery, it may be advisable to examine the transcripts in camera. That examination would shed light on whether plaintiffs have a "substantial need" for the documents that cannot be alleviated absent "undue hardship." The transcripts may cover the same ground as the allegedly protected documents, obviating plaintiffs' need for any of the disputed material. The District Court remains in the best position to make that determination. Accord United States v. Zolin, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).
 
 V.
 
 23
 For these reasons, we have no appellate jurisdiction and will dismiss the appeal.
 
 
 
 Notes:
 
 
 **
 The Honorable James M. Munley, United States District Judge for the Middle District of Pennsylvania, sitting by designation
 
 
 [1]
 Under Fed.R.Civ.P. 26(b)(3), "a party may obtain discovery of documents and tangible things otherwise discoverable ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."
 
 
 [2]
 Skeddle seeks to protect three documents: (1) his attorney's notes from a January 20, 1998 interview of Skeddle by Antitrust Division investigators; (2) his attorney's notes from a 1998 telephone conversation; and (3) his attorney's outline of a proffer to the Northern District of Ohio. Bryant claims the privilege for six documents: (1) his attorney's notes from a meeting with Antitrust Division investigators; (2) his attorney's notes regarding a conversation with an investigator; (3) an internal memorandum regarding the communications with the investigator; (4) his attorney's notes from a meeting between Bryant and the investigators; (5) a page of general notes from his attorney; and (6) an internal memorandum regarding negotiations
 
 
 [3]
 The statute provides: "The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States...."
 
 
 [4]
 We agree with the Court of Appeals for the Sixth Circuit, which stated, "The Supreme Court's adherence to theAlexander principle for obtaining appellate review for discovery orders has been unswerving." Starcher v. Corr. Med. Sys., Inc., 144 F.3d 418, 423 n. 4 (6th Cir.1998).
 
 
 [5]
 All the parties suggest the three criteria are satisfied here, but we have an "independent responsibility to examine our own jurisdiction sua sponte."In re Ford Motor Co., 110 F.3d 954, 958-59 (3d Cir.1997).
 
 
 [6]
 See Ford Motor Co., 110 F.3d at 961-64. If we wait to review those claims until the parties obtain a final judgment, we may not be able to "remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. At best ... an appellate court could send the case back for re-trial without use of the protected materials. At that point, however, the cat is already out of the bag." Id. at 963.
 
 
 [7]
 Cf. Connaught Labs., Inc. v. SmithKline Beecham P.L.C., 165 F.3d 1368, 1370 (Fed. Cir.1999) ("Nonparties may secure review of a discovery order by refusing to comply with it and appealing a consequent contempt order, which is considered final."); In re Sealed Case, 141 F.3d 337, 338-39 (D.C.Cir.1998); Bennett v. City of Boston, 54 F.3d 18, 20 (1st Cir.1995); see also Bogosian v. Gulf Oil Corp., 738 F.2d 587, 591 (3d Cir.1984) ("Unlike the non-party witness, a party has no immediate right to appeal even if it has been adjudicated in civil contempt to gain compliance with a discovery order.").
 
 
 [8]
 See also A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n, 233 F.3d 895, 899 (5th Cir.2000) (citing MDK and agreeing with its "most acceptable solution to this difficult problem," in part because "this hurdle to appellate review has been sanctioned by the Supreme Court"); FTC v. Alaska Land Leasing, Inc., 778 F.2d 577, 578 (10th Cir.1985) ("To perfect standing to appeal from a civil pretrial discovery order, a non-party deponent must refuse to comply and submit to a contempt proceeding. Thereafter, an adverse contempt order is final and it may be appealed.").
 
 
 [9]
 InPerlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), the Supreme Court allowed immediate review of certain discovery orders addressed to nonparties, absent contempt findings. But as the Court of Appeals for the District of Columbia Circuit has recognized, Perlman "reflected concern that where the subject of the discovery order (characteristically the custodian of documents) and the holder of a privilege are different, the custodian might yield up the documents rather than face the hazards of contempt, and would thereby destroy the privilege." In re Sealed Case, 141 F.3d at 340. In contrast, where the petitioner asserts its own interests in the work product, it has "the requisite incentives ... to risk contempt." Id.
 
 
 [10]
 InIn re Grand Jury we held an attorney not yet held in contempt could not challenge a discovery order. Id. Citing Cobbledick, we noted, "[U]nless and until a witness has been held in contempt, he has no standing to appeal from an order directing him to testify or produce documents before a grand jury. The policy, though at times a harsh one, was formulated to discourage appeals in all but the most serious cases." Id.
 
 
 [11]
 InBorden Co., we noted, "We have detected what appears to be an irresistible impulse on the part of appellants to invoke the `collateral order' doctrine whenever the question of appealability arises. Were we to accept even a small percentage of these sometime exotic invitations, this court would undoubtedly find itself reviewing more `collateral' than `final' orders." 410 F.2d at 845-46.
 
 
 [12]
 Skeddle contends Fed.R.Civ.P. 37(a)(1) did not provide the District Court with jurisdiction to hear his motion to compel. Under Rule 37(a)(1), a discovery order for "a person who is not a party shall be made in the court where the discovery is being, or is to be, taken." Skeddle contends the April 11 subpoena was issued from the Northern District of Ohio, so that court had to issue any order "compelling discovery."
 Had we jurisdiction, we would disagree. The Judicial Panel on Multidistrict Litigation transferred these actions for "coordinated or consolidated pretrial proceedings." The relevant statute provides that consolidated proceedings "shall be conducted by a judge or judges to whom such actions are assigned by the judicial panel...." 28 U.S.C. § 1407(b). Moreover, § 1407(b) empowers the transferee judge in multidistrict cases to act not only on behalf of the transferee district, but also with "the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated proceedings." Id. By way of example, the Courts of Appeals for the District of Columbia and Fifth Circuits have held the supervisory power over depositions in other districts may be exercised in person or by telephone. In re Corrugated Container Antitrust Litig., 662 F.2d 875 (D.C.Cir.1981); In re Corrugated Container Anti-Trust Litig., 620 F.2d 1086 (5th Cir. 1980). Regardless, Skeddle's counsel accepted service of both subpoenas, rather than filing a motion to quash under Fed.R.Civ.P. 45(c)(3)(A), effectively waiving the argument.
 Should Skeddle stand in contempt, we express no opinion on whether his appeal should be heard by this Court or the United States Court of Appeals for the Sixth Circuit.