NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1869

_____

ARCELIK A.S.

v.

E.I. DUPONT DE NEMOURS AND COMPANY

TDK ELECTRONICS AG; TDK INDIA PRIVATE LTD*,
Appellants

*(Pursuant to Rule 12(a), Fed. R. App. P.)

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-15-cv-00961)
District Judge: Honorable Leonard P. Stark

_____

Argued: February 11, 2021

Before: CHAGARES, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: May 20, 2021)

Benjamin Garrett Minegar
Jones Day
500 Grant Street
Suite 4500
Pittsburgh, PA 15219

Lawrence D. Rosenberg [ARGUED]
Jones Day

51 Louisiana Avenue, N.W.
Washington, DC 20001

Jason J. Rawnsley
Richards Layton & Finger
920 North King Street
One Rodney Square
Wilmington, DE 19801

    *Counsel for Appellants*

John A. Sensing [ARGUED]
Potter Anderson & Corroon
1313 North Market Street
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801

    *Counsel for Appellee*

_____

OPINION[*]

_____

SCIRICA, *Circuit Judge*

This discovery dispute arises out of civil litigation between a consumer appliance manufacturer and E.I. DuPont de Nemours and Co. ("DuPont"). In preparing its defenses, DuPont obtained the issuance of letters of request[1] to Germany and India. These letters of request sought to obtain testimony and documents from representatives of a non-party company known as TDK. After the District Court ordered the issuance of the letters of

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Also known as letters rogatory.

request, TDK sought to vacate the order, arguing the issuance of the letters violated international comity. The District Court referred the matter to a Magistrate Judge, who denied TDK's motion to vacate. The District Court then overruled TDK's objections to the Magistrate Judge's order and denied TDK's motion to vacate. For the reasons discussed below, we will affirm the District Court's order.

I

Arçelik, A.Ş. ("Arcelik"), a consumer appliance manufacturer, alleged a faulty DuPont product caused fires in clothing dryers made and sold by Arcelik. The specific product is Zytel, "a plastic resin manufactured, marketed, and sold by DuPont." J.A. 086. Zytel was intended to "operate under conditions of high heat and humidity," but in late 2012, Arcelik dryers began to catch fire. J.A. 086. Investigations suggested the fires were caused by defective batches of Zytel.

Zytel made its way to Arcelik's dryers through a third-party, German manufacturer TDK.[2] Specifically, TDK bought Zytel from DuPont and used the product to mold exterior components of capacitors. Arcelik then purchased the capacitors from TDK for use in Arcelik's dryers.

Arcelik brought suit against DuPont and did not name TDK as a defendant. DuPont filed a motion to dismiss, contending, in part, that TDK was a necessary and indispensable party under Federal Rule of Civil Procedure 19. DuPont asserted TDK was indispensable because the complaint implicated "the raw material/component part supplier defense." J.A.

---

[2] "TDK" in this case refers to TDK Electronics AG and TDK India Private Ltd. When the lawsuit was initiated, TDK Electronics went by the name Epcos AG.

119. The District Court rejected this argument and concluded that because the Complaint alleged Zytel itself was defective when it left DuPont's possession and the Complaint focused on DuPont's manufacture of Zytel, the raw material/component part supplier defense was not implicated.

As the case moved forward, DuPont sought discovery from TDK in order to examine "whether the design or manufacture of the electric capacitors had a role in the alleged fires[,] and . . . the extent to which Arcelik relied on or even cared about the use of Zytel . . . in [TDK's] electric capacitors." J.A. 135. To pursue this discovery, DuPont filed a motion for the issuance of letters of request to authorities in Germany and India under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention").[3] The requested letters sought testimony from individuals associated with TDK about the design and manufacture of TDK capacitors, the contractual relationship between TDK and Arcelik, and any coordination between TDK and Arcelik in investigating the dryer fires. The letter to India also included a request for documents.

The District Court granted the motion for letters of request. TDK filed a motion to vacate the order and the District Court referred the motion to Magistrate Judge Jennifer L. Hall, who denied the motion to vacate. TDK objected to the Magistrate Judge's ruling, but the District Court overruled those objections. The District Court applied the clearly erroneous or contrary to law standard in reviewing the Magistrate Judge's ruling because

---

[3]   Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Aug. 8, 1972, 23 U.S.T. 2555, 847 U.N.T.S. 231. Each party to the Hague Convention designates a "Central Authority" to receive requests and forward them to the appropriate authorities within their country. *Id.* art. 2.

the District Court concluded the motion was not dispositive. Following the order, the District Court entered a protective order to protect any trade secrets produced during the execution of the letters of request.

This appeal followed. Arcelik is taking no position on the underlying order and is not participating in this appeal.

II

As an initial matter, DuPont challenges our jurisdiction and contends the District Court's order denying the motion to vacate the letters of request was non-final because TDK can seek redress abroad in German and Indian courts.[4]

Federal courts of appeals have jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "A final decision of a district court means, with limited exceptions, an order that ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment. . . . Ordinarily, a pretrial discovery order such as this one is not considered final." *In re Madden*, 151 F.3d 125, 127 (3d Cir. 1998) (citations omitted).

TDK contends an exception should apply here because the order is either a final order not subject to any other appellate review or a non-final order appealable under the collateral order doctrine. TDK is a non-party in the underlying litigation and cannot appeal from the final judgment. And any enforceable orders to produce a witness or documents issued as a result of the letters of request will come from courts in Germany and India. If

---

4    The District Court had jurisdiction under 28 U.S.C. § 1332.

TDK refused to comply with the foreign orders, it would face contempt proceedings under foreign law, not U.S. law. At that point, a U.S. appeals court could not review the letters of request order or any contempt order issued by a foreign court.

While there is no direct precedent on point, we have explained that, in circumstances involving non-party discovery, an order is final when the aggrieved entity has no "means, other than [the] immediate appeal before us, to obtain appellate review of the district court's decision." *In re Madden*, 151 F.3d at 127.

Here, the District Court's order denied the motion to vacate letters of request for judicial assistance to Germany and India. If those countries grant the letters of request, their courts will issue orders under their respective laws. While TDK could raise independent challenges to any orders issued by a German or Indian court, those challenges would not constitute appellate review of the District Court's order under U.S. law. DuPont contends the proper approach for TDK to seek review is for the witnesses to refuse to testify and be held in contempt. *See In re Flat Glass Antitrust Litigation*, 288 F.3d 83, 88 (3d Cir. 2002) ("[N]onparty witnesses must be held in contempt before seeking appellate review."). Yet, in that situation, the witnesses would not be defying an order to testify by the District Court or any U.S. court, and we do not have appellate jurisdiction over contempt orders in Germany and India. If we reject jurisdiction over TDK's appeal, federal appellate review of this order would appear to be impossible.

Accordingly, the District Court's order is final for purposes of our review and we have jurisdiction.

6

TDK's challenge of the District Court's order rests on two grounds. First, TDK contends the District Court applied an incorrect standard of review. Second, TDK contends the District Court erred in its balancing of international comity factors related to the issuance of the letters of request.

Whether the District Court applied the correct standard of review to the Magistrate Judge's order is subject to our plenary review. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990); *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1246 (10th Cir. 2015). We review the District Court's balancing of the international comity factors for abuse of discretion. *See Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995) ("We apply the abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery."); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 305 (3d Cir. 2004) (reviewing the balancing of international comity factors for abuse of discretion). "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992) (internal quotation marks omitted). For the reasons discussed below, we conclude the District Court did not err.

## A. The District Court Applied the Correct Standard of Review to the Magistrate Judge's Decision.

TDK contends the District Court erred by applying the clearly erroneous standard in its review of the Magistrate Judge's decision. It contends the District Court should have applied *de novo* review.

The Federal Magistrates Act allows district court judges to delegate certain matters to a Magistrate Judge. 28 U.S.C. § 636. Upon objection from a party, the district court must review the Magistrate Judge's decision under a "clearly erroneous or contrary to law" standard when the matter is non-dispositive, and under a *de novo* standard when the matter is dispositive. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a)–(b).

"[A] motion is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *EEOC v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017). Accordingly, discovery orders are not normally dispositive. *See id.* (using a discovery motion as an example of a non-dispositive motion).

TDK contends letters of request are an exception to the rule that discovery orders are non-dispositive because this discovery dispute is the only dispute between it and DuPont and the dispute "is over regardless of which way the court rules." Appellant Br. at 20 (quoting *EEOC*, 866 F.3d at 100). TDK analogizes to the 28 U.S.C. § 1782[5] and administrative subpoena contexts. In both of those contexts, the order of the court—to enforce the foreign letter of request or the administrative subpoena—ends the controversy before the court. *See, e.g.*, *Frazier*, 966 F.2d at 817–18 (holding that proceeding for enforcement of an agency subpoena was a dispositive matter). TDK contends the circumstances here are similar to those contexts because the only remaining actions will take place abroad, outside of the U.S. court system.

---

[5] Discovery proceedings under § 1782 occur when a U.S. district court receives a letter of request from a foreign court sent under the Hague Convention.

8

But TDK's position elides a key distinction between motions for letters of request and proceedings involving § 1782 or the enforcement of administrative subpoenas.[6]  In those latter cases, the only role of the federal judiciary in the matter is to resolve the discovery question.  Before a federal court receives the § 1782 assistance request or motion to enforce an administrative subpoena, there is no case in federal court, no docket, no case number.  And once the court rules, that is the end of the involvement of the federal court system.  Here there is an underlying case.  *Arcelik v. DuPont* will continue regardless of how this discovery dispute is resolved.  Nothing we decide in this appeal will dispose of the lawsuit or any claim or defense in that litigation.

Moreover, TDK did not identify a circuit or district court case where a foreign third-party discovery request was considered dispositive.  And there are several unreported cases involving letters of request treating a Magistrate Judge's decision on these matters as non-dispositive.[7]

---

[6]  TDK fails to point to any cases affirmatively declaring § 1782 decisions are dispositive. Instead, they point to a Ninth Circuit concurrence advocating for that conclusion, a Tenth Circuit opinion questioning but not deciding whether such decisions are dispositive, and a treatise whose primary direct authority is the Ninth Circuit concurrence already mentioned.  Meanwhile, the majority of district courts to consider this question have determined § 1782 orders are non-dispositive.  *See In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) (collecting cases).

[7]  *See Bodyguard Prods., Inc. v. Musante*, Civ. No. 19-00139, 2020 WL 403720, at *2 (D. Haw. Jan. 24, 2020) (treating order denying motion for letters of request as non-dispositive); *Dyson, Inc. v. Sharkninja Operating LLC*, No. 14-cv-779, 2017 WL 446042, at *2 (N.D. Ill. Feb. 2, 2017) (treating order granting in part motion for letters of request as non-dispositive); *Tiffany (NJ) LLC v. Andrew*, No. 10 Civ. 9471, 2011 WL 11562419, at *1 (S.D.N.Y. Nov. 14, 2011) (treating order directing discovery through the Hague Convention as non-dispositive); *Richards v. Univ. Coll., Aberystwyth*, No. 04-cv-0073, 2005 WL 839100, at *1 (D. Minn. Apr. 12, 2005) (holding a motion for a letter of request "is not a dispositive motion in the sense that it is determinative of a

While it is a close question, we conclude the Magistrate Judge's opinion in this matter is non-dispositive.[8] This judgment is based on the fact—recognized by a growing number of district courts holding that decisions regarding letters of request are non-dispositive—that, unlike in the § 1782 and administrative subpoena contexts, the underlying case will continue in U.S. courts after this discovery dispute is settled and a decision on the motion will not terminate a claim or defense. *See, e.g.*, *NIKE, Inc. v. Wu*, 349 F. Supp. 3d 346, 352–53 (S.D.N.Y. 2018) (holding that a foreign third party's motion to quash a subpoena was non-dispositive because, unlike in the administrative subpoena context, the underlying civil action will continue in U.S. courts after the subpoena motion is decided); *see also supra* note 8.

Since the Magistrate Judge's decision was non-dispositive, the District Court applied the correct standard when it evaluated the decision subject to the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A).

---

cause of action, claim, or defense under the meaning of Fed. R. Civ. P. 72. Rather, the matter before the Court is properly categorized as a discovery request, which does not require the consent of parties to be decided before a magistrate judge").

[8] In making this conclusion, we do not endorse all of DuPont's contentions. DuPont asks us to conclude this matter is non-dispositive because TDK can raise future objections in German and Indian courts. But it is too much of a stretch to conclude that a discovery dispute is non-dispositive with respect to U.S. courts merely because it may continue elsewhere. In fact, the administrative subpoena context directly counters this argument because, despite the underlying disputes continuing outside of federal court, we have regularly held rulings on administrative subpoenas are dispositive. *See, e.g.*, *Frazier*, 966 F.2d at 817–18.

### B. *The District Court Did Not Abuse Its Discretion in Reviewing International Comity Factors.*

The court reasonably balanced the comity factors in concluding that they tip in favor of granting the letters of request. *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for Southern District of Iowa* is the guiding Supreme Court case for an international comity analysis. 482 U.S. 522 (1987).[9] In *Aerospatiale*, the Supreme Court identified five factors that are relevant to any comity analysis:

> (1) the importance to the . . . litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request

---

[9]  We need not decide two peripheral issues. First, while *Aerospatiale* directs district courts to "exercise special vigilance" in monitoring foreign discovery, it does not explicitly require a comity analysis prior to the issuance of a letter of request under the Hague Convention. 482 U.S. at 546. Instead, the *Aerospatiale* court only addressed the question of whether the Federal Rules of Civil Procedure could be used as an alternative to the Hague Convention procedures. We need not decide here whether *Aerospatiale* implicitly requires the comity analysis because—as we conclude in this section—even with a review of comity factors, the District Court did not abuse its discretion in rejecting the motion to vacate. Second, some circuits require—as an initial step in the comity analysis—the identification of a true conflict between U.S. law and foreign law before addressing *Aerospatiale*'s comity factors. *See, e.g.*, *In re Sealed Case*, 932 F.3d 915, 931 (D.C. Cir. 2019); *In re Maxwell Comm. Corp.*, 93 F.3d 1036, 1049 (2d Cir. 1996). But we need not decide here whether finding a true conflict is required to perform the comity analysis because we would affirm either way. If there is no conflict, then the District Court properly issued the letters of request because the information is relevant to DuPont's defenses and the request is proportional to the needs of the case. *See In re Sealed Case*, 932 F.3d at 931 ("[a]bsent a clash of foreign and domestic law, American courts may press forward free from worry that their rulings will threaten" international comity). And if there is a conflict, then the District Court was right to analyze the comity factors, and—as discussed in this section—did not abuse its discretion in denying the motion to vacate.

would undermine important interests of the state where the information is located.

482 U.S. at 544 n.28.

In reviewing the application of these factors, TDK is correct that we review questions of law *de novo* and questions of fact for clear error, but we review the District Court's conclusions as to the balancing of the factors "only for abuse of discretion." *In re Auto. Refinishing*, 358 F.3d at 305; *see In re Sealed Case*, 932 F.3d 915, 938 (D.C. Cir. 2019) ("We need not tarry over the Banks' remaining arguments that the district court abused its considerable discretion in balancing the comity factors."). The District Court applied the correct legal standard in reviewing the Magistrate Judge's opinion, *see supra* Part III.A, and applied the international comity framework TDK sought to have applied. We now review the District Court's determinations of fact and balancing of the factors and find no abuse of discretion.

*1. Importance to the Litigation*

The District Court found the discovery sought here is important to the litigation because it is "highly relevant" to DuPont's defenses. J.A. 14 at 36:18–37:13. TDK objects on two grounds.

First, TDK contends DuPont's defenses based on TDK's alleged negligence or wrongdoing were already rejected by the District Court when it denied DuPont's motion to dismiss, which sought dismissal of the underlying lawsuit brought by Arcelik for failure to join TDK as an indispensable party. But the court denied the motion to dismiss because the Complaint was limited to the manufacture of Zytel and did not implicate the "raw

12

material/component part supplier defense." J.A. 119. That is, the court rejected this argument because the allegations in the Complaint were limited to the manufacture of Zytel itself and not any other component part. Approximately three months later, DuPont filed its answer to the Complaint.

The different procedural postures at play in the motion to dismiss and the motion to vacate the letters of request are crucial. At the motion to dismiss stage, the District Court had to limit itself to a review of the Complaint and the Complaint focused on Zytel as it left DuPont's control. In the motion to vacate, by contrast, the question was whether the discovery would be relevant to defenses DuPont pled in its Answer filed after the denial of the motion to dismiss. Accordingly, even though TDK was not a necessary party under Rule 19, the District Court correctly held discovery from TDK is highly relevant to DuPont's defenses.

TDK's second objection relates to the identification, in the letter of request to Germany, of a former TDK employee—who TDK argues cannot be compelled to speak on its behalf, or perhaps at all under German law. But, as the District Court noted, the former employee has "relevant personal knowledge." J.A. 14 at 37:11–13. While the District Court expressed concern about "put[ting] a retired consultant in an uncomfortable and maybe expensive position," it stated that "if TDK doesn't want to put forward some current employee, . . . it will be [the former employee], failing TDK coming forward with someone else." J.A. 14 at 35:15–36:4. TDK has not put forward any other name. Oral Argument at 34:00–34:40, *Arcelik A.S. v. E.I. Dupont de Nemours and Co.*, (No. 20-1869), https://www2.ca3.uscourts.gov/oralargument/audio/20-1869_Arcelikv.EIDupont.mp3.

13

Article 3 of the Hague Convention requires the inclusion of "the names . . . of the persons to be examined" when a deposition is sought. Hague Convention, *supra* note 3, art. 3. To the extent German law precludes the former employee's testimony, German courts applying German law can determine the consequences of that preclusion in their execution of the letters of request. Accordingly, it was proper for the District Court to include the former employee's name in the letter of request under the Hague Convention, designating a person with relevant information and deferring to German courts to resolve any disputes about that person's testimony under German law.

### 2. *Specificity of the Requests*

The District Court found DuPont's requests were sufficiently specific and noted TDK could raise additional objections in German and Indian courts. TDK contends the requests are overbroad, in part, because they involve trade secrets. However, the fact that discovery might risk the divulgement of trade secrets is by itself insufficient to preclude any discovery, especially, as in this case, where the court has entered a protective order to guard those trade secrets.

Alternatively, TDK contends that *Aerospatiale* counsels against granting discovery when open-ended requests are "too burdensome or too intrusive," and that the District Court improperly outsourced some of this specificity review to Germany and India in violation of the court's responsibilities, under *Aerospatiale* and *In re Auto. Refinishing*, to minimize the cost and inconvenience of discovery and prevent discovery abuses.

But *Aerospatiale* was focused on whether the Federal Rules of Civil Procedure could be used instead of requiring first resort to the Hague Convention. *See supra* note 9.

14

Accordingly, some of the international comity concerns noted by the Court are lessened when only use of the Hague Convention is at issue because all the relevant nations have consented to the treaty process.[10] This is reflected in the Court's discussion of the burdensome nature of a request. While some discovery may be more intrusive than others—for example, requesting the identity of pilots on a flight versus a request for all of the design specifications for the aircraft—the Court used these hypotheticals to envision a situation where a district court would rely on the Hague Convention, because the treaty process may be more suitable to burdensome requests than domestic discovery rules. *Aerospatiale*, 482 U.S. at 545–46. We thus conclude that *Aerospatiale* does not counsel against granting discovery through letters of request simply because the discovery requested may be somewhat burdensome.

### 3. *Country of Origination*

There is no dispute that the information in question originated outside of the United States. Although the information originated abroad and the District Court suggested this weighed against issuing the letters of request, this was overcome by the fact that there were no alternative means for DuPont to obtain the information. We find no error in the District Court's conclusion.

### 4. *Availability of Alternative Means*

The District Court held there were "no alternative means for DuPont to secure the information it is seeking" because "they can't get it from TDK U.S.," as "much of what

---

[10] Additionally, the parties do not contest that the Hague Convention procedures govern the discovery dispute.

DuPont is seeking is internal information that is solely held at the foreign TDK entities." J.A. 15 at 38:5–11. Moreover, TDK's U.S. entity represented that it had no responsive documents to DuPont's subpoena. TDK objects on the grounds that DuPont is already in possession of the relevant information or can obtain it from Arcelik and that TDK has already provided "extensive information" to DuPont. Appellant Br. at 37–38. But, as DuPont notes, Arcelik witnesses and documents cannot "testify as to things like TDK's internal decision-making regarding the design of the capacitors and its decision to incorporate Zytel into the capacitors." Appellee Br. at 33. Additionally, the "extensive information" provided by TDK totals only between twenty to thirty pages. Appellee Br. at 34. Accordingly, the District Court appropriately concluded that there were no other means available for DuPont to obtain the information it seeks through the letters of request.

### 5. *National Interests*

The District Court held the U.S. has a "very important interest" in a defendant being able to exercise its "discovery rights and its right to prepare a defense." J.A. 15 at 38:20–24. With respect to German and Indian interests, the District Court highlighted that those countries "will ultimately decide about specific documents and specific questions and TDK's objections." J.A. 15 at 38:24–39:3. TDK objects that the issuance of the letters of request will harm German and Indian national interests in protecting trade secrets. But when a court issues letters of request under the Hague Convention, "it commits the issue whether compliance with the request would undermine important interests of the state where the information is located to the courts or other authorities of that state." Restatement (Third) of Foreign Relations Law § 473 reporters' note 5 (1987). So, TDK's

objection misses the mark. To the extent Germany and India's national interests in protecting trade secrets are implicated in this case, their courts will provide the relevant protection. Accordingly, the District Court properly held that this factor favored issuing the letters of request.

*  *  *

In sum, the District Court concluded it was not clearly erroneous for the Magistrate Judge to deny TDK's motion to vacate the letters of request. We conclude the District Court did not abuse its discretion in holding that the *Aerospatiale* factors weigh in favor of issuing the letters of request.

IV

For the foregoing reasons, we will affirm the District Court's order denying the motion to vacate the letters of request.