**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2381

In re: NATIONAL FOOTBALL LEAGUE PLAYERS'
CONCUSSION INJURY LITIGATION

*Thrivest Specialty Funding, LLC n/k/a Balanced Bridge Funding LLC,
Appellant

*(Pursuant to Rule 12(a), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-12-md-02323)
U.S. District Judge: Honorable Anita B. Brody
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
On March 31, 2023

Before: MATEY, FREEMAN, and FUENTES, *Circuit Judges*

(Filed: October 27, 2023)
_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

FUENTES, *Circuit Judge*.

In the latest postscript to this settled multidistrict litigation, Appellant Thrivest Specialty Funding, LLC ("Thrivest") argues that the District Court is improperly administering the settlement in a manner adverse to its interests. Because we lack appellate jurisdiction, we will dismiss Thrivest's appeal.

## I. Factual Background and Procedural History

Seven years ago, we affirmed the approval of a global settlement resolving claims that the National Football League ("NFL") failed to protect its players from risks associated with repeated concussions (the "Settlement Agreement").[1] The Settlement Agreement permits each retired NFL player with a qualifying neurocognitive or neuromuscular diagnosis to register with the claims administrator and receive compensation of up to $5 million.[2] It also contains an anti-assignment clause providing that any attempt by a class member to assign his rights in the settlement "will be void, invalid, and of no force and effect."[3]

While waiting to receive their awards, several class members contracted with Thrivest and other third parties for an immediate cash advance, in exchange for a partial assignment of the settlement proceeds.[4] Exercising its ancillary jurisdiction to enforce

---

[1] *See generally In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410 (3d Cir. 2016).

[2] *Id.* at 423–25.

[3] *See In re Nat'l Football League Players Concussion Inj. Litig.*, 923 F.3d 96, 109 (3d Cir. 2019) ("*NFL 2019*").

[4] *Id.* at 101–02.

the Settlement Agreement, the District Court held these agreements void under the anti-assignment clause.[5] We reversed in part. We held that the District Court correctly held that "true assignments"—those authorizing funders to seek money directly from the claims administrator—were void.[6] But we determined that the District Court exceeded its authority to administer the settlement when it "purported to . . . void contractual provisions that went only to a lender's right to receive funds *after* the player acquired them."[7] We took no position on the enforceability of any individual agreement, a matter which we emphasized must be "litigated or arbitrated in the appropriate fora."[8]

After further litigation on remand, the claims administrator established the operative Rules Governing Payment of Claims Involving Third-Party Funders (the "Funder Rules") in March 2020. As relevant here, the Funder Rules provide that (1) whenever there is a third-party funding agreement, settlement awards will be paid directly to class members—not to the class members' lawyers; (2) the payment of an award "has no bearing whatsoever" on the class member's potential obligations to a third party; and (3) any dispute between a class member and a third-party funder with respect to the disposition of settlement proceeds "must be litigated or arbitrated in an appropriate forum outside of the claims administration context."[9]

---

[5] *See In re Nat'l Football League Players Concussion Inj. Litig.*, No. 12-2323, 2017 WL 8785717, at *1 (E.D. Pa. Dec. 8, 2017).

[6] *NFL 2019*, 923 F.3d at 110.

[7] *Id.* at 113 (emphasis added).

[8] *Id.*

[9] JA 788.

Thrivest's attempts to collect from certain class members have proved challenging. In at least two instances, a class member contracted for a cash advance from Thrivest, received a direct settlement payout, and dissipated the proceeds without repaying Thrivest. Frustrated with its inability to collect, Thrivest moved the District Court to revise the Funder Rules to eliminate direct payments to class members. The District Court denied the motion in July 2022, holding that the current process fully complies with our prior decisions, and that third-party funders must continue to litigate their individual claims outside the claims administration process.

Thrivest now appeals.

## II. Appellate Jurisdiction

Neither party disputes appellate jurisdiction, but we must examine it *sua sponte*.[10] Thrivest asserts jurisdiction under 28 U.S.C. § 1291, which permits appeal of "all final decisions of the district courts." But the District Court's denial of Thrivest's motion to revise the Funder Rules is not a "final decision," and so we lack authority to review it.

Orders related to the administration of a settlement necessarily come after a final judgment, and so are "not traditional 'final' orders under 28 U.S.C. § 1291."[11] Still, the collateral order doctrine permits review of post-settlement orders that are "(1) conclusive, (2) resolve important questions completely separate from the merits, and (3) would

---

[10] *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 88 n.5 (3d Cir. 2002).

[11] *NFL 2019*, 923 F.3d at 106.

render such important questions effectively unreviewable on appeal from final judgment in the underlying action."[12]

In an earlier appeal, we held that we lacked jurisdiction to review an order much like the one challenged here. We explained that an order instructing the claims administrator to "disburse settlement proceeds directly to qualifying class members who had entered into assignment agreements" neither substantively resolved a dispute nor otherwise raised important issues.[13] Instead, this "purely administrative" order to "distribute funds in a particular way" presented "little for an appellate court to review, and [was] inappropriate for review under the narrow collateral order doctrine."[14] We also observed that "[m]any postjudgment orders will involve ministerial or discretionary matters that are effectively unreviewable."[15]

Thrivest now again challenges the direct payments to class members, and we again lack jurisdiction to review the District Court's discretionary order. Thrivest's two arguments confirm that its present appeal is indistinguishable from the prior appeal dismissed for lack of jurisdiction.

---

[12] *Id.*

[13] *Id.* at 103, 106–07.

[14] *Id.* at 106–107. By contrast, we exercised jurisdiction over the District Court's order voiding all assignments because it conclusively resolved a substantive issue—the validity of the assignments—and involved an important issue bearing on "freedom of contract and the authority of the District Court." *Id.* at 106.

[15] *Id.* at 107 (citation omitted).

First, Thrivest claims that the direct payments required by the Funder Rules amount to a substantive ruling that all third-party cash agreements are invalid, in violation of our prior holding that the District Court lacked authority to make that determination. But that is patently incorrect—the Funder Rules unambiguously state that they have "no bearing whatsoever" on a class member's potential obligations to a third party and that any dispute on that subject "must be litigated or arbitrated in an appropriate forum outside of the claims administration context."[16] The Rules simply distribute funds in a particular way: directly to class members instead of through counsel. Once an award is distributed, Thrivest remains free to pursue a collection action.

Second, Thrivest complains about the practical effect of the Funders Rules, variously arguing that it "de facto encourage[es]" class members to skirt their obligations under the cash advance agreements and has created burdensome litigation in the ensuing collection actions.[17] Put differently, it does not like the "particular way" the claims administrator is distributing funds to class members and would prefer a different method.[18] We lack jurisdiction to entertain such an appeal.[19]

---

[16] JA 788.

[17] Appellant's Br. at 25–30.

[18] *Cf. NFL 2019*, 923 F.3d at 107.

[19] Thrivest relies on our prior order denying its petition for a writ of mandamus, which instructed that further concerns about the settlement administration should be raised by motion with the District Court and then, if necessary, appealed in due course. *See In re Thrivest Specialty Funding, LLC*, No. 19-3149 (3d Cir. Oct. 31, 2019). But that order did not purport to guarantee appellate jurisdiction over a future appeal involving non-substantive issues.

### III. Conclusion

For these reasons, we will dismiss Thrivest's appeal for lack of appellate jurisdiction.

FREEMAN, *Circuit Judge*, dissenting.

I respectfully disagree with the majority's conclusion that we lack jurisdiction over this appeal. Exercising this Court's jurisdiction would not change the practical outcome for the parties, as I would address the merits and affirm the District Court's post-judgment order. Nonetheless, our Court has a "virtually unflagging obligation" to exercise the jurisdiction given to it, even when the appellant's argument proves unavailing. *Mata v. Lynch*, 576 U.S. 143, 150 (2015) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Because I believe we have jurisdiction under the collateral order doctrine, I respectfully dissent.

I

This appeal challenges a post-judgment order regarding the administration of a class settlement between the NFL and over 20,000 retired football players. Thrivest moved the District Court to revise the rules governing payment of claims involving third-party funders. It argued that the District Court failed to administer the Settlement Agreement properly and consistent with our prior mandate. The District Court disagreed and denied the motion. The majority concludes that we lack jurisdiction to review the District Court's order under the collateral order doctrine. I disagree. Although the collateral order doctrine is "narrow and modest," *New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld*, 604 F.3d 816, 819 (3d Cir. 2010) (internal quotation marks and citation omitted), in my view the District Court's order falls within the doctrine's scope.

The "collateral order doctrine permits review of post-settlement orders that are '(1) conclusive, (2) resolve important questions completely separate from the merits, and

(3) would render such important questions effectively unreviewable on appeal from final judgment in the underlying action.'" Maj. Op. at 5 (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.* ("*NFL 2019*"), 923 F.3d 96, 106 (3d Cir. 2019)).  The District Court's order satisfies each of these factors.

First, there are "no additional steps for the District Court to take" in denying Thrivest's motion, so the order is conclusive.  *NFL 2019*, 923 F.3d at 106; *see also* 15B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3916 (2d ed. 2023 update) ("Appeal should be available whenever the trial court has finally disposed of the question, and there are no pending proceedings raising related questions.").

Second, the order resolves an important issue apart from the merits of the underlying class action.  It resolves Thrivest's argument that the District Court failed to administer the Settlement Agreement properly and within the scope of its authority under this Court's ruling in *NFL 2019*.  Order and Explanation, JA 2–3 (explaining that *NFL 2019* does not support Thrivest's argument and that the Funder Rules fall within the District Court's authority to administer the Settlement Agreement until funds are disbursed).  Whether a court exceeds its authority is a "substantive issue" we deemed important when applying the collateral order doctrine in *NFL 2019*.  923 F.3d at 106; *see also U.S. Fid. & Guar. Co. v. Arch Ins. Co.*, 578 F.3d 45, 56 (1st Cir. 2009) (recognizing that "a challenge to a court's authority to act" is an important question).  And here the answer to that question has the potential to impact thousands of class members.

Third, the issue resolved by the order would be otherwise unreviewable.  This is a post-judgment order in a class action whose final judgment has already been appealed

and affirmed, and this order could not be appealed with any future "final order." 923 F.3d at 106. So all three requirements are satisfied, and we have jurisdiction.

The majority relies on *NFL 2019* to reach the opposite conclusion. There, we considered our jurisdiction over two post-judgment orders in the NFL class action: (1) a December 2017 order that voided class members' assignment agreements in their entirety and (2) a February 2018 order that directed the Claims Administrator to disburse funds consistent with the 2017 order. *NFL 2019*, 923 F.3d at 105. We applied the collateral order doctrine and exercised jurisdiction over the December 2017 order but not the February 2018 order. *Id.* at 105–07.

The majority concludes that the order at issue in this appeal is analogous to the February 2018 order that we lacked jurisdiction to review in *NFL 2019*. Maj. Op. at 5–7. But consider what each order in *NFL 2019* did. "[T]he District Court's December 8, 2017 order resolved the substantive issues related to assignment agreements, and the February 20, 2018 order was merely a ministerial order designed to effectuate the Court's prior order." *NFL 2019*, 923 F.3d at 107. We lacked jurisdiction over the February 2018 order because it merely gave effect to the December 2017 order. The December 2017 order, on the other hand, resolved the substantive question of the voidability of class members' assignment agreements. It implicated the "freedom of contract and the authority of the District Court," *id.* at 106, so we reviewed it under the collateral order doctrine.

The order at issue here does not simply effectuate a prior decision; it denies Thrivest's substantive arguments that the Funder Rules are improper. As the majority

3

acknowledges, the order also resolves Thrivest's argument that the District Court lacks authority to administer the Settlement Agreement pursuant to the Funder Rules. Maj. Op. at 6 ("Thrivest claims that the direct payments required by the Funder Rules amount to a substantive ruling that all third-party cash agreements are invalid, in violation of our prior holding that the District Court lacked authority to make that determination"). The majority and I agree that this is a losing argument. *See id.* But the strength of an argument should not be conflated with its substance. *See Mata*, 576 U.S. at 150 ("The jurisdictional question . . . is of course distinct from the merits question."). The order Thrivest seeks to appeal—like the December 2017 order that we reviewed in *NFL 2019*—resolves the substantive and important question of whether the District Court exceeded its authority. I would reach the merits under the collateral order doctrine.

## II

Upon exercising this Court's jurisdiction, I would affirm the District Court's order. Thrivest raises two arguments, each of which is unavailing.

First, Thrivest argues that the payment structure in the Funder Rules does not "comport with this Court's prior guidance" in *NFL 2019*. Appellant Br. at 30; *see also id.* at 23–27. That is not so. In *NFL 2019*, we held that the District Court's power over the settlement funds and the class ends after funds are distributed to a class member. 923 F.3d at 112. But we also held that "the District Court retain[s] broad authority to administer the settlement," *id.* at 107, and we did not prescribe the manner in which monetary awards are to be distributed. Accordingly, the District Court's order is consistent with our 2019 mandate.

4

Second, Thrivest argues that the Funder Rules "prejudice [its] ability to enforce its [cash advance] agreements." Appellant Br. at 2. But in *NFL 2019* we held that the "District Court's authority certainly does not extend to how class members choose to use their settlement proceeds after they are disbursed." 923 F.3d at 111. The District Court, therefore, properly declined to revise the Funder Rules based on the interests of third-party funders in receiving post-disbursement settlement proceeds.

\* \* \*

In sum, I believe the Court has jurisdiction over this appeal. I would reach the merits and affirm.